**[J-29A-2016, J-29B-2016, J-29C-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., EAKIN, J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 30 MAP 2015 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court at No. 1420 MDA 2013, dated |
| | : | April 14, 2014, Affirming the Order of |
| v. | : | the York County Court of Common |
| | : | Pleas, Criminal Division, at No. CP-67- |
| | : | CR-0001486-2010, dated July 19, 2013. |
| GABRIEL J. MARTINEZ, | : | |
| | : | ARGUED: March 8, 2016 |
| Appellee | : | |
| | | |
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 32 MAP 2015 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court at No. 1522 MDA 2013 dated |
| | : | April 14, 2014 Affirming the Order of the |
| v. | : | York County Court of Common Pleas, |
| | : | Criminal Division, at No. CP-67-CR- |
| | : | 0000227-2011, dated July 31, 2013. |
| ADAM MACKENZIE GRACE, | : | |
| | : | ARGUED: March 8, 2016 |
| Appellee | : | |
| | | |
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 34 MAP 2015 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court at No. 1422 MDA 2013 dated |
| | : | April 15, 2014 Affirming the Order of the |
| v. | : | York County Court of Common Pleas, |
| | : | Criminal Division, at No.CP-67-CR- |
| | : | 0006313-2005, dated July 19, 2013. |
| WAYNE PATRICK SHOWER, | : | |
| | : | ARGUED: March 8, 2016 |
| Appellee | : | |

**OPINION**

**JUSTICE BAER**                                    **DECIDED: September 28, 2016**

In the three consolidated appeals presently before this Court, all of which originated in the Court of Common Pleas of York County before the same judge, the Superior Court applied its *en banc* decision in Commonwealth v. Hainesworth, 82 A.3d 444 (Pa. Super. 2013) (*en banc*), and concluded that Appellees are entitled to specific performance of their plea agreements, *i.e.*, Appellees' sexual offender registration requirements are governed by Megan's Law,[1] which was in effect when Appellees entered their plea agreements, and not by the Sex Offender Registration and Notification Act ("SORNA"),[2] which superseded Megan's Law. We granted allowance of appeal to examine Hainesworth and its applicability to Appellees' cases. Consistent with the Superior Court's decision in Hainesworth, we hold that Appellees are entitled to the benefit of the bargains struck with the Commonwealth when the trial court accepted the parties' plea agreements. Accordingly, we affirm.

## I. Background

### A. Appellee Wayne Patrick Shower ("Shower")

The Commonwealth charged Shower with aggravated indecent assault, 18 Pa.C.S. § 3125(a)(7), and indecent assault, 18 Pa.C.S. § 3126(a)(7). The Commonwealth and Shower entered into a plea agreement. In exchange for Shower's guilty plea to indecent assault, the Commonwealth withdrew the aggravated-indecent-assault charge and recommended that Shower receive a sentence of 11½ to 23 months of imprisonment. The trial court accepted the plea agreement and sentenced Shower on June 12, 2006.

---

[1] 42 Pa.C.S. §§ 9791-9799.9 (expired).

[2] 42 Pa.C.S. §§ 9799.10–9799.41.

Megan's law was in effect when the trial court accepted the plea agreement. Under Megan's Law, an aggravated-indecent-assault conviction triggered a lifetime of registering as a sexual offender. 42 Pa.C.S. § 9795.1(b)(2) (expired). However, because the Commonwealth withdrew that charge and Shower was convicted of indecent assault,[3] Megan's Law required Shower to register as a sexual offender for only ten years. 42 Pa.C.S. § 9795.1(a)(1) (expired).

**B. Appellee Gabriel J. Martinez ("Martinez")**

The Commonwealth charged Martinez with one count each of involuntary deviate sexual intercourse, 18 Pa.C.S. § 3123(a)(7), statutory sexual assault, 18 Pa.C.S. § 3122.1(a), and indecent assault, 18 Pa.C.S. § 3126(a)(7). Martinez and the Commonwealth entered into a plea agreement. In exchange for Martinez pleading guilty to indecent assault, the Commonwealth agreed to *nolle pros* the charges of involuntary deviate sexual intercourse and statutory sexual assault and recommended that Martinez be sentenced to five years of probation. The trial court accepted the plea agreement and sentenced Martinez accordingly on August 27, 2010.

Megan's law was in effect when the trial court accepted the plea agreement, and pursuant to Megan's Law, a conviction for involuntary deviate sexual intercourse obligated the offender to register for life as a sexual offender. 42 Pa.C.S. § 9795.1(b)(2) (expired). Because the Commonwealth *nolle prossed* that charge, Martinez's indecent-

---

[3] A judgment of conviction follows a trial court's determination that a defendant is knowingly and voluntarily entering a guilty plea and the court's acceptance of the defendant's plea. See Eisenberg v. Com., Dep't of Pub. Welfare, 516 A.2d 333, 335 (Pa. 1986) (quoting favorably Commonwealth v. Ferguson, 44 Pa.Super. 626, 628 (1910), for the proposition that a judgment of conviction follows upon pleas of guilty and *nolo contendere*).

assault conviction required him to register as a sexual offender for only ten years pursuant Megan's Law. 42 Pa.C.S. § 9795.1(a)(1) (expired).

### C. Appellee Adam MacKenzie Grace ("Grace")

The Commonwealth charged Grace with one count each of unlawful contact with a minor, 18 Pa.C.S. § 6318(a)(1), corruption of minors, 18 Pa.C.S. § 6301(a)(1), and indecent assault, 18 Pa.C.S. § 3126(a)(8). The Commonwealth and Grace entered into a plea agreement. Grace agreed to plead guilty to corruption of minors and indecent assault. In exchange for Grace's guilty pleas, the Commonwealth *nolle prossed* the unlawful-contact-with-a-minor charge and recommended an aggregate sentence of three years of probation. On March 22, 2011, the trial court accepted the plea agreement and sentenced Grace.

Megan's law was in effect when the trial court accepted the parties' plea agreement. Neither of Grace's convictions required him to register as a sexual offender under Megan's Law.[4] However, had Grace been convicted of unlawful contact with a minor, Megan's Law would have mandated that he register as a sexual offender for ten years. 42 Pa.C.S. § 9795.1(a)(1) (expired).

### II. SORNA

After the trial court accepted the parties' plea agreements and sentenced Appellees, the General Assembly passed SORNA as Act 111 of 2011, signed

---

[4] Shower and Martinez were convicted of indecent assault under 18 Pa.C.S. § 3126(a)(7). Generally, a violation of that statutory subsection is graded as a first-degree misdemeanor. 18 Pa.C.S. § 3126(b)(3). Grace was convicted of indecent assault pursuant to 18 Pa.C.S. § 3126(a)(8), which is graded as a misdemeanor of the second degree. 18 Pa.C.S. § 3126(b)(1). Megan's Law attached a ten-year registration requirement to an indecent-assault conviction when the offense was graded as a first-degree misdemeanor or higher. 42 Pa.C.S. § 9795.1(a)(1) (expired). Thus, unlike Shower and Martinez, Grace's indecent-assault conviction did not require him to register as a sexual offender under Megan's Law.

December 20, 2011. SORNA provided for the expiration of Megan's Law as of December 20, 2012, and for the effectiveness of SORNA on the same date. While a comprehensive review of SORNA is unnecessary for purposes of the appeals presently before this Court,[5] it is important to highlight that SORNA "added crimes to the list defined as sexually violent offenses, and established a three-tiered system for classifying such offenses and their corresponding registration periods." Commonwealth v. Farabaugh, 128 A.3d 1191, 1192 (Pa. 2015). Tier I offenses require registration for 15 years; Tier II offenses mandate 25 years of registration; and Tier III offenses obligate an offender to register for his or her lifetime. 42 Pa.C.S. § 9799.15(a)(1), (2), and (3), respectively.

Regarding its applicability to convicted criminals, SORNA provides, in pertinent part:

> The following individuals shall register with the Pennsylvania State Police as provided in sections 9799.15 (relating to period of registration), 9799.19 (relating to initial registration) and 9799.25 (relating to verification by sexual offenders and Pennsylvania State Police) and otherwise comply with the provisions of this subchapter:
>
> ***
>
> (2) An individual who, on or after the effective date of this section, is, as a result of a conviction for a sexually violent offense, an inmate in a State or county correctional institution of this Commonwealth, including a community corrections center or a community contract facility, is being supervised by the Pennsylvania Board of Probation and Parole or county probation or parole, is subject to a sentence of intermediate punishment or has supervision transferred pursuant to the Interstate Compact for Adult Supervision in accordance with section 9799.19(g).
>
> ***

---

[5] This Court provided a thorough review of SORNA's history and details in In re J.B., 107 A.3d 1, 3-9 (Pa. 2014).

(3) An individual who:

(i) was required to register with the Pennsylvania State Police pursuant to this subchapter prior to December 20, 2012, and who had not fulfilled the individual's period of registration as of December 20, 2012[.]

42 Pa.C.S. § 9799.13. SORNA defines "Sexually violent offense" as "[a]n offense specified in section 9799.14 (relating to sexual offenses and tier system) as a Tier I, Tier II or Tier III sexual offense." 42 Pa.C.S. § 9799.12.

Shower and Martinez were convicted of indecent assault under 18 Pa.C.S. § 3126(a)(7), which SORNA classifies as a Tier III offense. 42 Pa.C.S. § 9799.14(d)(8). Tier III offenses require a lifetime of sexual offender registration. 42 Pa.C.S. § 9799.15(a)(3). Shower and Martinez already were registered as sexual offenders under Megan's Law prior to December 20, 2012, and they had not fulfilled their periods of registration by that date. Consequently, SORNA's registration requirements facially would apply to them, 42 Pa.C.S. § 9799.13(3)(i), and would obligate them to register as sexual offenders for life, not for the ten years of registration they faced at the time the trial court accepted their plea agreements.

Grace was convicted of indecent assault for violating 18 Pa.C.S. § 3126(a)(8), which SORNA classifies as a Tier II sexual offense. 42 Pa.C.S. § 9799.14(c)(1.3). Tier II offenses require registration as a sexual offender for 25 years. 42 Pa.C.S. § 9799.15(a)(2). When SORNA became effective, Grace had been convicted of a sexual offense as defined by SORNA, and he still was serving his probationary term for that conviction. Accordingly, SORNA's registration requirements facially would apply to him, 42 Pa.C.S. § 9799.13(2), and would necessitate that he register as a sexual offender for ten years rather than not having to register at all, as was the case when the trial court accepted his plea agreement.

## III. Trial Court Proceedings

## A. Shower

On March 12, 2013, Shower filed in the trial court a "Petition to Enforce Plea Agreement or for a Writ of *Habeas Corpus*." Therein, Shower explained that he entered his plea with an understanding and agreement that he would be required to register as a sexual offender for only ten years under Megan's Law. Because SORNA now would obligate him to register as a sexual offender for life, Shower asked the trial court to enforce specifically the parties' plea agreement and to order that he has to register as a sexual offender only for ten years as contemplated by the agreement and his accepted guilty plea.

In support of this request, Shower alluded to contract law principles and averred that the application of SORNA's increased registration requirements to him violates the parties' plea agreement. Shower also took the position that the application of SORNA to him violates the Due Process and Contract Clauses of the United States and Pennsylvania Constitutions.[6]

On May 31, 2013, the trial court held a hearing on Shower's petition. The only evidence offered at that hearing was Shower's testimony. He testified that, when he entered into the plea agreement, he understood that part of the agreement required him to register as a sexual offender for only ten years. N.T., 5/31/2013, at 4-5. Shower further stated that the main reason that he entered into the agreement with the Commonwealth was to avoid the lifetime registration requirement Megan's Law attached to an aggravated-indecent-assault conviction, *i.e.*, the charge that the Commonwealth withdrew as part of the plea agreement. N.T., 5/31/2013, at 5-6.

---

[6] For reasons we discuss below, this Court's Opinion does not address these alleged constitutional violations. *Infra*, at 19 n. 16.

## B. Martinez

The day after Shower filed his petition, Martinez filed a nearly identical petition in the trial court. Like Shower, SORNA would obligate Martinez to register as a sexual offender for life, not for the ten years that Megan's Law's required when the trial court accepted his plea agreement. The trial court held a hearing regarding Martinez's petition on June 21, 2013. No evidence was offered at the hearing, as the Commonwealth was willing to stipulate to the facts as stated in Martinez's petition, N.T., 6/21/2013, at 13-14, which were nearly identical to the facts alleged in Shower's petition.

## C. Grace

On the same day as the hearing on Martinez's petition, Grace filed a petition in the trial court. Grace's petition was substantially similar to the petitions filed by Shower and Martinez. When the trial court accepted Grace's plea agreement, he was not required to register as a sexual offender. SORNA now would mandate him to register as a sexual offender for 25 years. For the same reasons cited in the petitions filed by Shower and Martinez, Grace asked the trial court to issue an order instructing the Commonwealth to perform specifically the plea agreement, which for Shower would mean that he is not required to register as a sexual offender.

## IV. Trial Court Orders and Opinions

On July 19, 2013, the trial court entered separate orders granting the petitions of Shower and Martinez. In the two opinions in support of those orders, the court concluded that the application of SORNA to persons such as Shower and Martinez violates the *Ex Post Facto* Clause of both the United States and Pennsylvania

Constitutions.[7]  The court then examined whether principles of contract law entitle Shower and Martinez to specific performance of their plea agreements.  In this regard, the court determined that general principles of contract law apply in the cases and that Shower and Martinez are entitled to the benefit of their bargains with the Commonwealth.  Thus, the court concluded, Shower and Martinez are required to register as sexual offenders only for ten years; not for their lifetimes as SORNA would mandate.  The Commonwealth timely filed notices of appeal.

Soon thereafter, the Commonwealth filed identical court-ordered Pa.R.A.P. 1925(b) statements in the cases concerning Shower and Martinez.  Germane to this matter, the Commonwealth did not present an issue in their 1925(b) statements explicitly challenging the trial court's contract law analysis; however, the Commonwealth did assert that the trial court erred by holding that the application of SORNA to Shower and Martinez violated the Contract Clauses of the state and federal constitutions, seemingly confusing contract law and Contract Clause analyses, as the trial court did not find that the Contract Clauses of either constitution were violated.[8]

---

[7] As noted previously, the same trial court judge from the Court of Common Pleas of York County addressed all of Appellees' petitions.  Further, as will be discussed below, because we are able to dispose of these matters on non-constitutional grounds, it is unnecessary to address the trial court's conclusions regarding any alleged *ex post facto* violation.  *Infra*, at 19 n. 16.

[8] Generally speaking, the Contract Clauses of the Pennsylvania and United States Constitutions prohibit the Legislature from enacting laws that retroactively impair contract rights.  See First Nat. Bank of Pennsylvania v. Flanagan, 528 A.2d 134, 137 (Pa. 1987) (explaining that "[t]he contracts clauses of the United States and Pennsylvania Constitutions protect contracts freely arrived at by the parties to them from subsequent legislative impairment or abridgment").  Thus, unlike a claim that requires a court to apply principles of contract law, when a court is presented with an issue that implicates the Contract Clauses, the court must examine whether a statute, enacted after parties have entered into a contract, unconstitutionally infringes on the parties' contractual rights.  None of the trial court's opinions in these matters addressed whether SORNA unconstitutionally infringes upon the contractual rights of the Commonwealth and Appellees.

The trial court subsequently issued opinions pursuant to Pa.R.A.P. 1925(a). Those opinions are nearly identical to the original opinions that the court issued in support of its orders granting the petitions of Shower and Martinez. Notably, however, in its original opinions, the court named one section "Plea Bargains as Contracts," and under that section, it provided a contract law analysis of the parties' plea agreements, concluding that Shower and Martinez are entitled to the benefit of their bargains. Trial Court Opinions, 7/19/2013, at 6-7. Apparently mislead by the Commonwealth's 1925(b) statements, in its Pa.R.A.P. 1925(a) opinions, the court renamed the "Plea Bargains as Contracts" sections of its prior opinions as "Contract Clause." 1925(a) Opinions, 10/2/2013 and 10/3/2013, at 7. Despite these title changes, the court nonetheless offered the same contract law analyses and conclusions in its 1925(a) opinions as it did in its original opinions.

Finally, with regard to Grace, the trial court entered an order granting his petition and adopting the initial opinion it authored in Martinez's case. The Commonwealth timely filed a notice of appeal and, subsequently, a court-ordered Pa.R.A.P. 1925(b) statement, which was exactly the same as the 1925(b) statements it filed in the cases of Shower and Martinez. The trial court responded by filing an opinion that tracked its previously issued Pa.R.A.P. 1925(a) opinions.

The Superior Court consolidated the Commonwealth's appeals regarding Martinez and Grace.[9] Commonwealth v. Martinez et al., 102 A.3d 530 (Pa. Super. 2014) (unpublished memorandum) ("Martinez/Grace Appeal"). The court considered

---

[9] This consolidated appeal included two other appellants, Shawn Patrick McGinnis, Jr. ("McGinnis") and Christina J. Lasater ("Lasater"). When this Court granted the Commonwealth's petitions for allowance of appeal, McGinnis and Lasater were named as appellees. However, McGinnis and Lasater subsequently filed motions to dismiss them from the appeal, and this Court granted their motions.

the Martinez/Grace Appeal separately from the Commonwealth's appeal in Shower's case. However, the same three-judge panel of the Superior Court decided the Martinez/Grace Appeal and the appeal in the Shower's case. Commonwealth v. Shower, 102 A.3d 533 (Pa. Super. 2014) (unpublished memorandum) ("Shower Appeal"). While these appeals were pending in the Superior Court, an *en banc* panel of that court issued an opinion in Hainesworth, directly on point, which we now summarize.

## V. Hainesworth

The Commonwealth charged Hainesworth with three counts of statutory sexual assault, 18 Pa.C.S. § 3122.1; two counts of aggravated indecent assault, 18 Pa.C.S. § 3125(a)(8); three counts of indecent assault, 18 Pa.C.S. § 3126(a)(8); and two counts of criminal use of a communication facility, 18 Pa.C.S. § 7512. Hainesworth, 82 A.3d at 445. Megan's Law was in effect at that time. If convicted of these charges, the only convictions that would have required Hainesworth to register as a sexual offender under Megan's Law would have been the convictions for aggravated indecent assault, which carried a lifetime registration requirement. 42 Pa.C.S. §9795.1(b)(2) (expired).

On February 27, 2009, Hainesworth and the Commonwealth entered into a plea agreement pursuant to which Hainesworth pled guilty to three counts of statutory sexual assault, three counts of indecent assault, and one count of criminal use of a communication facility. Hainesworth, 82 A.3d at 445. Thus, as part of the agreement, the Commonwealth withdrew all of the aggravated-indecent-assault charges that would have triggered registration under Megan's Law. Id. at 446. However, if applicable to Hainesworth, SORNA would alter his sexual offender registration status.

More specifically, Hainesworth pled guilty to, *inter alia*, violating 18 Pa.C.S. § 3126(a)(8), which, as mentioned above, SORNA classifies as a Tier II sexual offense. 42 Pa.C.S. § 9799.14(c)(1.3). Tier II sexual offenses require registration as a sexual

offender for 25 years. 42 Pa.C.S. § 9799.15(a)(2). When SORNA became effective, Hainesworth was serving a term of probation as a result of a conviction that SORNA classifies as a sexually violent offense. Hainesworth, 82 A.3d at 446. Consequently, based on his probationary status, SORNA ordinarily would have applied to Hainesworth, 42 Pa.C.S. § 9799.13(2), and would have obligated him to register as a sexual offender for 25 years, as opposed to the non-registration contemplated by the parties' plea agreement.

In anticipation of the effective date of SORNA's new registration requirements, Hainesworth filed a motion on December 13, 2012, seeking termination of his probation. After a hearing, the trial court denied the petition; however, the court's order further stated that Hainesworth was not subject to SORNA's registration requirements. In this regard, the court posited that the application of SORNA to Hainesworth would violate due process, fundamental fairness, and the parties' negotiated plea agreement. Id. at 446-47. The Commonwealth appealed to the Superior Court, which heard the matter *en banc*.

The Hainesworth court began its analysis by highlighting the very different manners in which the parties characterized the issue before the court. Id. at 447. Hainesworth framed the issue similarly to how the trial court viewed it, *i.e.*, whether the parties' plea agreement included a term that Hainesworth does not have to register as a sexual offender, and if so, whether he is entitled to the benefit of his bargain. On the other hand, the Commonwealth believed the issue involved a question of statutory application of SORNA, which could not be avoided. Consistently, the Commonwealth argued that the Superior Court had previously upheld changes to the registration requirements of Megan's Law applicable to registrants who are under correctional supervision, noting that registration requirements are non-punitive collateral

consequences of convictions, id., and that the court should apply the same reasoning to SORNA. The Hainesworth court determined that the trial court and Hainesworth properly framed the issue in the case as one that implicated a contract law analysis. Id.

Thereafter, the Hainesworth court concluded that the record unambiguously demonstrated that Hainesworth, the Commonwealth, and the guilty plea court understood that a sexual registration requirement was not included as a term of Hainesworth's plea agreement. Id. at 447-48. According to the court, the plea agreement appeared to have been precisely structured so that Hainesworth would not be subjected to a registration requirement. Id. at 448. In this regard, the court found significant that the plea agreement completely eliminated only the aggravated-indecent-assault counts, the sole counts Hainesworth faced that would have triggered a Megan's Law registration requirement. Id.

The Hainesworth court next concluded that the trial court did not err by ordering specific performance of the terms of the parties' plea agreement. The court did so by first rejecting the Commonwealth's contention that, because registration under SORNA is a non-punitive collateral consequence of Hainesworth's conviction, Hainesworth is subject to SORNA's reporting requirements. Instead, the court determined that the dispositive question is whether sexual offender registration was a term of the parties' agreement.[10] Id. at 448-49 The court further highlighted that, while a plea agreement arises in a criminal context, it remains contractual in nature and, therefore, must be analyzed under principles of contract law. Id. at 449.

---

[10] Based upon this determination, the Hainesworth court did not address whether SORNA's registration requirements are collateral consequences of qualifying convictions. Hainesworth, 82 A.3d at 448-49 n.4.

The Hainesworth court bolstered this portion of its decision by noting that nearly all criminal cases are disposed of by plea bargains  Thus, in the court's view, avoiding possible perversion of the plea bargaining system is critical.  Id. (citing Commonwealth v. Fruehan, 557 A.2d 1093, 1094 (Pa. Super. 1989)).  After espousing this view, the court emphasized the serious nature of sexual offender registration requirements, pointing out that these requirements are so rigorously enforced that, pursuant to 42 Pa.C.S. § 9799.25(e), neither a natural disaster nor any other event requiring evacuation of residences relieves a sexual offender of the duty to register under SORNA.[11]  Id.  The court observed that, when a defendant agrees to plead guilty to avoid registering as a sexual offender, the defendant trades important rights, such as the right to a jury trial, in exchange for not being subjected to the non-trivial restrictions encompassed by sexual offender registration requirements.  According to the court, "[f]undamental fairness dictates that this bargain be enforced."  Id.

The Hainesworth court found further support for its position in the United States Supreme Court's decision in Santobello v. New York, 404 U.S. 257 (1971).  The Hainesworth court quoted Santobello for the proposition that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  Santobello, 404 U.S. at 262.  The Hainesworth court opined that this proposition of law is reflected in the law of this Commonwealth, which holds that, when a trial court accepts a plea agreement, the convicted criminal has forfeited the right to a trial by jury and, therefore, must be afforded the benefit of all of the promises made by the district attorney.

---

[11] Subsection 9799.25(e) of SORNA provides, "The occurrence of a natural disaster or other event requiring evacuation of residences shall not relieve the sexual offender of the duty to register or any other duty imposed by this subchapter."  42 Pa.C.S. § 9799.25(e)

Hainesworth, 82 A.3d at 449 (quoting Fruehan, *supra*). The court then reiterated that "[s]pecific enforcement of valid plea bargains is a matter of fundamental fairness." Id. (citing Commonwealth v. Mebane, 58 A.3d 1243, 1249 (Pa. Super. 2012)).

Additionally, the Hainesworth court analogized the circumstances of Hainesworth's case with the situation presented to this Court in Commonwealth v. Zuber, 353 A.2d 441 (Pa. 1976). In Zuber, the trial court accepted a plea agreement which contained a sentence that was both advantageous to Zuber and, as it turns out, incapable of fulfillment under the law. Yet, this Court held that Zuber was entitled to receive the benefit of his bargain -- "a prison sentence commensurate with the term contemplated by all of the parties to the plea proceedings," Zuber, 353 A.2d at 446 -- despite the unenforceable nature of the sentence.[12] Premised upon these conclusions and supporting logic, the Hainesworth court found no error in the trial court's decision to order specific performance of the agreement between the Commonwealth and Hainesworth. For these reasons, the *en banc* panel unanimously affirmed the trial court's order. We now turn our attention back to the Superior Court's decisions regarding the Commonwealth's appeals *sub judice*.

## VI. Superior Court's Memorandum Opinions

The Commonwealth presented the same four issues in the Martinez/Grace Appeal as it did in the Shower Appeal. The Superior Court disposed of both appeals

---

[12] When Zuber was arrested and charged with murder, he was on parole for a previous conviction. Zuber, 353 A.2d at 442. As to the murder charge, Zuber and the Commonwealth entered into a plea agreement, which the trial court accepted. The agreement required the Commonwealth to join with Zuber's counsel in a request to the State Board of Parole that Zuber's murder sentence run concurrently with his parole-related sentence. Id. at 443. However, as this Court explained, a parole violator is statutorily required to serve his back-time before he can begin serving a new sentence. Id. Thus, the sentence contemplated by the parties' plea agreement could not be fulfilled under the law.

based upon the issue the Commonwealth phrased as: whether the trial court erred by concluding that the application of SORNA's registration requirements to Appellees violates the federal and state Contract Clauses. The court construed the arguments that the Commonwealth presented in support of this issue as a challenge to the trial court's conclusion that Appellees are entitled to the benefit of the bargains that they negotiated with the Commonwealth.[13]  Martinez/Grace Appeal at 6 (quoting the Commonwealth's Superior Court brief); Shower Appeal at 2-3 (same). The Superior Court panel then summarized Hainesworth and determined that the holding therein controlled the outcome of each of Appellees' cases. Subsequently, the court examined Appellees' individual circumstances in light of Hainesworth's holding.

Regarding Shower, the Superior Court concluded that the record, specifically the transcript of Shower's guilty plea colloquy, clearly demonstrated the nature of the parties' agreement. Shower Appeal at 6-7. During that colloquy, the parties discussed that: the Commonwealth would be withdrawing the charge of aggravated indecent assault (which would have required Shower to register as a sexual offender for life under Megan's Law); Shower would be pleading guilty to indecent assault; and, under Megan's Law, an indecent-assault conviction required the criminal to register as a sexual offender for ten years. Id. (citing to the notes of testimony from Shower's guilty plea colloquy). The Superior Court pointed out that subjecting Shower to SORNA's lifetime-registration requirement for a Subsection 3126(a)(7) indecent assault conviction would have placed Shower in the same position that he was in when he began the plea

---

[13] In its memorandum opinion in the Shower Appeal, the Superior Court noted the apparent confusion in the trial court proceedings concerning contract law and Contract Clause analyses. Shower Appeal at 11-12 n.4. The court concluded that a non-constitutional contract law analysis was appropriate to resolve the issue before the court. Id.

process -- facing a lifetime of sexual offender registration requirements. Id. at 7. Thus, the court found that a term of the parties' plea agreement contemplated that Shower would have to register as a sexual offender only for ten years.

As to Martinez, the Superior Court observed that, at the hearing regarding Martinez's petition to enforce his plea agreement, the Commonwealth stipulated to the facts as set forth in the petition. Martinez/Grace Appeal at 10. Because the petition alleged, *inter alia*, that Martinez entered into the plea agreement with the agreement that he was required to register as a sexual offender for only ten years, id. (quoting Martinez's Petition to Enforce Plea Agreement or for a Writ of *Habeas Corpus*, 3/13/2013, at ¶1), the Superior Court concluded that a term of the parties' plea agreement was that Martinez would have to register as a sexual offender only for ten years.

Concerning Grace, the Superior Court highlighted the parties' stipulation of facts, wherein they specified, *inter alia*, that the plea agreement was based upon Grace not having to plead to charges that would require him to register as a sexual offender. Martinez/Grace Appeal at 10-11 (quoting Stipulation of Facts, 7/30/2013, at ¶4).[14] Based upon this stipulation, the Superior Court determined that the parties' plea agreement did not require Grace to register as a sexual offender.

The Superior Court rejected the Commonwealth's various attempts to distinguish Appellees' cases from Hainesworth and held that, because Appellees' plea agreements contained conditions regarding their sexual offender registration status, Hainesworth

---

[14] After quoting the parties' stipulation of facts, the Superior Court cited paragraph five of an exhibit supposedly attached to Grace's petition. Martinez/Grace Appeal at 10-11. The certified record before this Court indicates that the parties filed their stipulation of facts on July 30, 2013, separately from Grace's petition, and that the paragraph the court quoted was paragraph four of the stipulated facts.

mandates that they receive the benefit of their bargains. Consequently, pursuant to the Superior Court's rationale, Martinez's and Shower's registration as sexual offenders would be for the ten year period contemplated by their plea agreements, and Grace would not be required to register as a sexual offender, per the terms of his plea agreement.

## VII. The Parties' Arguments to this Court

The Commonwealth filed a petition for allowance of appeal in all three cases. This Court granted the petitions and consolidated the matters in order to evaluate Hainesworth and its application to Appellees' cases. The issues in these cases implicate questions of law. As with all questions of law, our standard of review is *de novo*, and our scope of review is plenary. Commonwealth v. Crawley, 924 A.2d 612, 614 (Pa. 2007).

In its briefs to this Court,[15] the Commonwealth continues to invoke the constitutional Contract Clauses and to refer to a violation of those clauses. However, as noted previously, neither the trial court nor the Superior Court disposed of Appellees' cases by way of a Contract Clause constitutional analysis. Rather, the trial and intermediate courts clearly applied general contract law in deciding that Appellees should receive the benefit of their bargains.

Appellees have identified this weakness in the Commonwealth's briefs. Indeed, Appellees dedicate significant portions of their briefs arguing that this Court should dismiss the appeals, primarily on the basis that "the Commonwealth seeks review of a claim that was not the basis of the ruling below[.]" Martinez/Grace Brief at 18

---

[15] The parties filed four briefs in this Court. Martinez and Grace jointly filed a brief, and Shower filed a separate brief; the Commonwealth filed a brief addressing the cases of Martinez and Grace and a different brief regarding Shower's case.

(capitalization omitted). We decline Appellees' invitation to dismiss this matter on procedural grounds.

At the inception of these cases, Appellees, in their various petitions, injected the issue of whether principles of contract law require specific performance of the parties' plea agreements. In addition to finding that the application of SORNA to Appellees constitutes an *ex post facto* violation, the trial court determined that principles of contract law mandate that Appellees receive the benefit of their bargains. The Superior Court affirmed the trial court's orders solely on the basis of contract law principles. Moreover, throughout this litigation, the parties have provided adequate argument on these non-constitutional principles, including the Commonwealth in its briefs to this Court. Consequently, we now will consider the cases solely under common law contract principles.[16]

Ultimately, the Commonwealth asks this Court to reject Hainesworth and remand Appellees' cases for further consideration. At the core of its argument is the Commonwealth's belief that SORNA's registration requirements, like Megan's Law's registration requirements, constitute collateral consequences of Appellees' convictions.[17] According to the Commonwealth, when it enters into a plea agreement

---

[16] In their briefs to this Court, Appellees offer alternative, constitutional grounds in support of affirming the Superior Court's orders. To the extent that this Court could reach those constitutional issues, we decline to do so, as the issue in this case can be decided on non-constitutional grounds. See P.J.S. v. Pennsylvania State Ethics Comm'n, 723 A.2d 174, 176 (Pa. 1999) ("When a case raises both a constitutional and a non-constitutional issue, a court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds.").

[17] The Commonwealth's belief in this regard is based upon this Court's previous decisions where we found that the registration requirements of various versions of Megan's Law did not constitute punishment but, rather, amounted to collateral consequences of qualifying criminal convictions. E.g., Commonwealth v. Williams, 832 A.2d 962 (Pa. 2003). It, however, remains an open question whether SORNA's registration requirements constitute punishment for constitutional purposes. Indeed, (continued…)

with a defendant, the parties are bound by any collateral consequences that exist at the time of sentencing, unless the General Assembly changes those collateral consequences by subsequently enacting legislation. Based upon this position, the Commonwealth contends that the Legislature altered the terms of the various plea agreements herein by enacting SORNA, and thus, the Commonwealth should no longer be bound by the terms of those agreements. See Commonwealth's Martinez/Grace Brief at 13 ("The Hainesworth decision binds the Commonwealth to fixed terms of a contract, even though enforcement of that contract is no longer legally possible because the Legislature has changed said terms."); Commonwealth's Shower Brief at 13 (same).

Stated succinctly, Appellees primarily contend that Hainesworth was correctly decided and that the Superior Court properly applied Hainesworth in concluding that they are entitled to the benefit of their bargains -- Martinez and Shower have to register as a sexual offender for ten years, and Grace does not have to register as a sexual offender. As to the Commonwealth's belief regarding the alleged collateral nature of SORNA's registration requirements, Appellees take the position that the Hainesworth court properly rejected the claim that "a promise of non-registration should not be enforced because registration is 'collateral' to the sentence." Martinez/Grace Brief at 39; Shower's Brief at 26. Indeed, Appellees echo the Hainesworth court's determination that, for purposes of a contractual analysis of the parties' plea agreement, the dispositive question regarding a convicted criminal's sexual offender registration status is whether sexual offender registration was a term of the parties' agreement, and if it

---

(…continued)
this Court recently granted allocatur to consider that question. Commonwealth v. Reed, 135 A.3d 177 (Pa. 2016). In any event, for reasons we discuss below, whether SORNA's registration requirements constitute collateral consequences has no impact on this matter.

was, then that term must be enforced. For the reasons that follow, we agree with Appellees.

## VIII. Discussion

As an initial matter, the Hainesworth court accurately described the critical role that plea agreements play in the criminal justice system. In fact, courts have long recognized that plea negotiations and agreements are essential components of the criminal justice system. See, e.g., Santobello, 404 U.S. at 260 (explaining that "[t]he disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice"). In this Commonwealth, we look upon the practice of plea bargaining with favor. Zuber, 353 A.2d at 443.

We acknowledge that the analogy of a plea agreement as a contract is not a perfect one. For instance, unlike a typical contract, a plea agreement does not become binding on the parties upon their consent to terms; rather, a plea agreement is not valid and binding until it is evaluated and accepted by a third party, *i.e.*, a trial court. See Pa.R.Crim.P. 590(A)(3) (stating that a judge may refuse to accept a plea of guilty or *nolo contendere* and that the judge shall not accept the plea unless the judge determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered).

Nonetheless, as the Hainesworth court recognized, plea agreements clearly are contractual in nature. See Puckett v. United States, 556 U.S. 129, 137 (2009) (stating that, "[a]lthough the analogy may not hold in all respects, plea bargains are essentially contracts"). For all intents and purposes, the parties agree on this point. See Commonwealth's Martinez/Grace Brief at 13 ("A guilty plea is a contract."); Commonwealth's Shower Brief at 13 (same); Martinez/Grace Brief at 30 ("Specific

enforcement of a plea agreement is also supported by contract law, but with a significant distinction.") (footnote omitted); Shower's Brief at 20 (same). The parties' agreement on this point is not surprising, as this Court utilizes concepts closely associated with contract law when evaluating issues involving plea agreements.

By way of example and pertinent to Appellees' cases, in Commonwealth v. Spence, 627 A.2d 1176 (Pa. 1993), Spence argued that the trial court erred by refusing to enforce an oral plea agreement allegedly reached by the Commonwealth and Spence prior to his trial. Spence, 627 A.2d at 1184. In rejecting this argument, this Court acknowledged that, after a plea agreement has been entered and accepted by a trial court, the Commonwealth must abide by the terms of the plea agreement. The Court, however, clarified that, prior to the entry of a guilty plea, the defendant has no right to specific performance of an agreement. Id. Stated in the affirmative, after parties enter into a plea agreement and the trial court accepts it, the convicted criminal can seek specific performance of the agreement. "Specific performance" is a traditional contract remedy that is available when monetary damages are inadequate. See BLACK'S LAW DICTIONARY 1425 (8th ed. 2004) (defining "specific performance" as, *inter alia*, "a court-ordered remedy that requires precise fulfillment of a legal or contractual obligation when monetary damages are inappropriate or inadequate . . .").

In this vein, the Santobello Court instructed that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello, 404 U.S. at 262. Consistent with Santobello, this Court has held that, when a trial court has accepted a plea agreement entered into by the Commonwealth and a defendant, the prosecutor is duty bound to fulfill the promises made in exchange for the

defendant's guilty plea.[18]  See Zuber, 353 A.2d at 444 (holding that the prosecutor has an affirmative duty to honor all promises made in exchange for a defendant's plea) (citing, *inter alia*, Santobello); Spence, 627 A.2d at 1184 (requiring the Commonwealth to abide by the terms of a plea agreement when the agreement was entered on the record and accepted by a trial court).  "Our courts have demanded strict compliance with that duty in order to avoid any possible perversion of the plea bargaining system, evidencing the concern that a defendant might be coerced into a bargain or fraudulently induced to give up the very valued constitutional guarantees attendant the right to trial by jury."  Zuber, 353 A.2d at 444.  Consequently, in this Commonwealth, when trial courts accept plea agreements, the convicted criminals, like Appellees in this case, are entitled to the benefit of their bargains.  Id.

## IX. Conclusion

When a question arises as to whether a convicted criminal is entitled to specific performance of a term of his plea agreement, the focus is not on the nature of the term, *e.g.*, whether the term addressed is a collateral consequence of the defendant's conviction.[19]  Rather, quite simply, the convicted criminal is entitled to the benefit of his

---

[18] Convicted criminals also must fulfill the promises they make in connection with plea agreements.  See Commonwealth v. Wallace, 870 A.2d 838, 843 n.6 (Pa. 2005) ("The defendant, on the other hand, accepts this benefit with the implicit promise that he will abide by the terms of the agreement and behave in accordance with the legal punishment imposed by the court.").

[19] Indeed, despite the unenforceable nature of the agreed-upon sentence in Zuber, this Court determined that Zuber was entitled to the benefit of his bargain.  In other words, the Zuber Court did not simply conclude that Zuber was not entitled to the bargained-for sentence because the sentence was unenforceable.  Instead, the Court examined the parties' agreement, found that the agreement included the unenforceable sentence, and held that Zuber was entitled to that sentence.  To be clear, in concluding that Zuber was entitled to the sentence for which he bargained, this Court modified the sentence to make it compliant with the law and the parties' plea agreement.  Zuber, 353 A.2d at 446.

bargain through specific performance of the terms of the plea agreement. Santobello, 404 U.S. at 262; Spence, 627 A.2d at 1184. Thus, a court must determine whether an alleged term is part of the parties' plea agreement. If the answer to that inquiry is affirmative, then the convicted criminal is entitled to specific performance of the term.

With regard to Appellees' cases, the Superior Court accurately reported that the Commonwealth stipulated to the facts as set forth in Martinez's petition. Martinez/Grace Appeal at 10; N.T., 6/21/2013, at 13-14. In the petition, Martinez alleged, *inter alia*, that he entered into the plea agreement "pursuant to an understanding and agreement that [he] was required to register as a sexual offender for only ten years." Martinez's Petition to Enforce Plea Agreement or for a Writ of *Habeas Corpus*, 3/13/2013, at ¶1. By stipulating to this fact, the Commonwealth confirmed that the parties' plea agreement contained a term requiring Martinez to register as a sexual offender for ten years. Thus, Martinez is entitled to the benefit of that bargain.

Concerning Grace, he and the Commonwealth entered into a stipulation of facts. Those facts included: "The plea agreement [Grace's counsel] negotiated with the Commonwealth was based on Mr. Grace not having to plea to charges which would require registration under Megan's Law in effect at the time of the plea." Stipulation of Facts, 7/30/2014, at ¶4. By stipulating to this fact, the Commonwealth admitted that the parties' plea agreement contained a term which contemplated that Grace would not have to register as a sexual offender. Consequently, Grace is entitled to the benefit of his bargain.

Regarding Shower's case, in concluding that the record demonstrated the nature of the parties' plea agreement, the Superior Court accurately recounted the discussion that took place at Shower's plea colloquy. Shower Appeal at 6-7. That discussion included Shower's counsel stating that Shower would be subject to ten years of

registration under Megan's Law. N.T., 3/6/2006, at 5. Thus, the Superior Court held that the record demonstrated that Shower was entitled to the benefit of his bargain -- ten years of registering as a sexual offender. The Commonwealth fails to convince us that the court erred in this regard. In fact, the Commonwealth fails to address this conclusion in its brief to this Court. Moreover, the Commonwealth does not recognize that the trial court credited the testimony Shower offered at the hearing on his petition to enforce his plea agreement.[20] N.T., 5/31/2013, at 8. Accordingly, we have no reason to disturb the Superior Court's determination that Shower need only register as a sexual offender for ten years.

For these reasons, we affirm the orders of the Superior Court.

Former Justice Eakin and Justice Donohue did not participate in the consideration or decision of this case.

Justices Todd, Dougherty and Wecht join the opinion.

Chief Justice Saylor files a concurring opinion.

Justice Wecht files a concurring opinion.

---

[20] As we discussed above, at that hearing, Shower testified that, when he entered into the plea agreement, he understood that part of the agreement required him to register as a sexual offender for ten years and that the main reason he entered into the agreement was to avoid the lifetime registration requirement Megan's Law attached to an aggravated-indecent-assault conviction. N.T., 5/31/2013, at 4-6.