J-A19023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL P. MCMANUS, | : | |
| | : | |
| Appellant. | : | No. 267 EDA 2019 |

Appeal from the Order Entered, December 21, 2018,
in the Court of Common Pleas of Bucks County,
Criminal Division at No(s):  CP-09-CR-0005883-2009.

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                    Filed: August 27, 2020

Daniel P. McManus appeals from the order treating his Petition to Terminate Registration Requirements of SORNA II as a petition filed pursuant to the Post Conviction Relief Act ("PCRA"),[1] and denying relief because the petition was untimely.  While we agree that McManus could seek such relief outside the PCRA, his claim fails given our Supreme Court's recent decision in **Commonwealth v. Lacombe**, ____ A.3d ____, 2020 WL _____ (35 & 64 MAP 2018) (Pa. 2020) (filed July 21, 2020).  Thus, we affirm.

On November 9, 2009, McManus entered a guilty plea to endangering the welfare of a child, indecent assault of person less than 13 years of age,

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

_____

*   Former Justice specially assigned to the Superior Court.

indecent assault of person less than 16 years if age, and corruption of minors,
after he confessed to molesting his adopted daughter, then 17 years old, over
the course of almost ten years. The trial court deferred sentencing for the
completion of an evaluation by the Pennsylvania Sexual Offenders Assessment
Board (SOAB"). On December 20, 2010, this Court determined that
[McManus] met the criteria to be considered a sexually violent predator
("SVP") and sentenced him to a term of incarceration of one year less one day
to two years less one day plus a consecutive five-year probationary term.
Pursuant to Megan's Law III,[2] McManus was required to register as a sex
offender for the duration of his lifetime. McManus did not file a direct appeal;
therefore, his judgment of sentence became final on January 10, 2011.

The PCRA court detailed McManus' first attempt to obtain post-
conviction relief as follows:

> On February 2, 2018, more than seven years after his
> judgment of sentence became final, [McManus] filed a
> "Motion to Bar the Applicability of Sex Offender Registration
> and/or Petition for Writ of Habeas Corpus," which sought to
> bar any requirement that he register as a sexual offender
> based on the Pennsylvania Supreme Court's decision in
> (**Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017)]
> and the Pennsylvania Superior Court decision in
> [**Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super.
> 2017)]. On March 8, 2018, the Commonwealth filed a
> response in opposition to [McManus'] motion, contending
> that the motion should be treated as untimely under the

---

[2] 42 Pa.C.S.A. §§ 9791-9799.9 (expired Dec. 20. 2012).

[PCRA], and contesting this Court's jurisdiction to rule on the merits of [McManus'] motion.

On March 14, 2018, [the PCRA court] issued a Notice of Intent to Dismiss [McManus' motion] pursuant to Pennsylvania Rule of Criminal Procedure 907, in which [the court] concluded that the motion was properly subsumed under the PCRA [and, therefore, untimely filed]. On May 4, 2018, [McManus] filed an untimely response to the Notice of Intent to Dismiss, and on May 21, 2018, [the PCRA court] entered an Order dismissing [McManus'] motion.

[McManus] did not timely appeal from [the PCRA court's] Order of May [21,] 2018. Rather he filed a "Motion for 30 day Extension of Time to File Appeal" on July 3, 2018. On August 8, 2018, [the PCRA court] ordered the Commonwealth to respond to [McManus'] motion and on August 14, 2018, the Commonwealth filed its answer in opposition to the motion. [The PCRA court] subsequently denied [McManus'] Motion for Extension of Time on September 4, 2018.

PCRA Court Opinion, 3/12 /19, at 5-6.[3]

The PCRA court further summarized the procedural history regarding the motion at issue in this appeal:

On October 3, 2018, [McManus] filed a "Petition to Terminate Registration and Notification Requirements of SORNA II." On October 15, 2018, [the PCRA court] scheduled a hearing on [McManus'] petition and ordered that the Commonwealth file a response. The Commonwealth filed an "Answer and Memorandum of Law in Opposition to [McManus'] Petition" on November 5, 2018. After hearing argument on November 16, 2018, this Court ordered that both parties file responsive briefs by November 30, 2018. Upon consideration of the Commonwealth's Supplemental Memorandum of Law, and [McManus'] Reply

_____

[3] We note that in **Commonwealth v. Butler**, 226 A.3d 972 (Pa. 2020), our Supreme Court reversed this Court, finding that an SVP determination under SORNA is not punishment and, therefore, not unconstitutional.

> to the Commonwealth's Answer and Memorandum of Law,
> [the PCRA court] denied [McManus' petition] on December
> 2[1], 2018.

*Id.* at 6. This timely appeal followed. Both McManus and the PCRA court have complied with Pa.R.A.P. 1925.

McManus now raises the following issues:

> I. Whether the [PCRA] court erred in characterizing the Petition to Terminate Registration Requirements of SORNA II as a [PCRA petition], and in dismissing the same as untimely?
>
> II. Whether the retroactive application of the registration, notification and verification requirements of SORNA II, to persons whose offenses occurred prior to the statute's effective date, violates the *ex post facto* clauses of the Pennsylvania and United States Constitutions?

McManus' Brief at 3.[4]

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (citations omitted).

---

[4] ***See*** U.S. Const. art. 1, § 9; § 10 (providing federal prohibition against *ex post facto* laws); Pa. Const., Article I, § 17 (providing state prohibition against *ex post facto* laws).

In his first issue, McManus asserts that the PCRA court erred in dismissing the petition at issue as an untimely PCRA petition. According to McManus, because "[t]he Pennsylvania Supreme Court has not yet issued a decision declaring the registration and notification requirements of Subchapter I of SORNA II to be punitive," this Court's "pre-*Muniz* holdings that lower courts have jurisdiction to decide the merits of challenges to retroactive application of Subchapter I" permit his filing outside of the PCRA. McManus' Brief at 9; *see id.*, at 11 (citing *Commonwealth v. Bundy*, 96 A.3d 390 (Pa. Super. 2014), *Commonwealth v. Partee*, 86 A.3d 245, 247 (Pa. Super. 2014), and *Commonwealth v. Price*, 876 A.2d 988, 992 (Pa. Super. 2005)).

Most recently, our Supreme Court in *Lacombe*, *supra*, addressed Lacombe's challenge as to whether the PCRA is the sole avenue for challenging sexual offender statutes and, if so, whether Lacombe was required to establish an exception to the PCRA's timeliness requirements. *See Lacombe*, ____ A.3d at ____, Slip Opinion at 20. The High Court observed that they have never held that a defendant could only challenge the sexual offender statutes via a timely petition under the PCRA.[5] As our Supreme Court explained in detail:

_____

[5] Justice Dougherty delivered the Majority Opinion, joined by Chief Justice Saylor and Justices Baer and Todd. Justice Mundy joined the majority opinion but expressed her disagreement with the Majority's treatment of one of the balancing factors considered when conducting the *ex post facto* analysis. Justice Wecht filed a Concurring and Dissenting Opinion, joined by Justice Donohue, in which he stated his agreement with the jurisdictional issue, but opined that Subchapter I remained punitive. *See infra*. We further note that,

This Court has not yet required that sexual offender registration statutes be challenged through the PCRA or some other procedural mechanism. Indeed, we have consistently decided cases regarding sexual offender registration statutes that were challenged via different types of filings. *See Muniz*, *supra* (successful challenge to constitutionality of SORNA via direct appeal), *Commonwealth v. Martinez*, 147 A.3d 517, 523 (Pa. 2016) (successful challenge to increase of registration term through "Petition to Enforce Plea Agreement or for a Writ of Habeas Corpus" where PCRA petition would have been untimely), *A.S. v. Pa. State Police*, 143 A.3d 896, 903 n.7. (Pa. 2016) (successful challenge to registration term through *mandamus* action against PSP), [*Commonwealth v. Williams*, ("*Williams II*"), 832 A.2d 962 (Pa. 2003)] (unsuccessful challenge to constitutionality of Megan's Law II through "Motion for Extraordinary Relief" and "Motion for Relief"). Our approach in this regard takes into account the fact that frequent changes to sexual offender registration statutes, along with more onerous requirements and retroactive application, complicate registrants' ability to challenge new requirements imposed years after their sentences become final.

This is especially so under the PCRA as many registrants, Lacombe included, would be ineligible for relief on timeliness grounds. *See* 42 Pa.C.S. § 9545(b)(1) (PCRA petition must be filed within one year of judgment of sentence becoming final unless exception applies). Other registrants may be ineligible because their sentence has expired while their registration requirements continue. *See* 42 Pa.C.S. § 9543(a)(1) (PCRA petitioner must be serving sentence to be eligible for relief). Both situations arise from the fact that the registration period does not begin until registrants are released from prison, which may well be after their sentence has become final or may signal the completion of their sentence. Accordingly, we decline to find the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes and we thus conclude the trial court had jurisdiction to consider

---

in *Lacombe,* the High Court also addressed the companion case of *Commonwealth v. Whitmayer*.

Lacombe's "Petition to Terminate His Sexual Offender Registration Requirements."

***Lacombe***, ____ A.3d at ____, Slip Opinion at 20-21.

In light of the above, the PCRA court, in this case, erred in treating McManus' "Petition to Terminate Registration and Notification Requirements of SORNA II" as an untimely PCRA petition. Thus, we may address his second issue in which he claims applying Subchapter I of SORNA II to him violates both the federal and state prohibition against *ex post facto* laws.

McManus summarizes his argument on this issue as follows:

> [McManus] submits that he cannot be compelled to comply with Subchapter I. Subchapter I suffers from the same inadequacies as its predecessor SORNA. It imposes a direct restraint upon [McManus], includes requirements that are historically regarded as punishment, is only applicable after a criminal conviction, promotes the traditional aims of punishment, and is excessive in relation to the purpose to which it is assigned. Accordingly, Subchapter I violates the *ex post facto* clauses of the Pennsylvania and United States Constitutions.

McManus' Brief at 9.[6]

Contrary to McManus' argument on this issue, the Pennsylvania Supreme Court in ***Lacombe*** has now decided that the registration and notification requirements of Subchapter I of SORNA II are ***not*** punitive.

---

[6] In his Majority Opinion in ***Lacombe***, Justice Dougherty provides a thorough discussion of the original SORNA statute, the ***Muniz*** decision, and the new requirements of Subchapter I. ***See Lacombe***, ____ A.3d at ____, Slip Opinion at 7-19. Thus, we need not repeat this statutory history and case law here.

Therefore, Subchapter I's application to McManus does not violate the *ex post facto* clauses of the state and federal constitutions.

In **Lacombe**, **supra**, the High Court began its *ex post facto* analysis by applying the same two-part analysis employed in **Muniz**, **supra**, and previous cases:

> We first consider whether the General Assembly's "intent was to impose punishment, and, if not, whether the statutory scheme is nonetheless so punitive either in purpose of effect as to negate the legislature's nonpunitive intent." **Williams II**, 832 A.2d at 971. If we find the General Assembly intended to enact a civil scheme, we then must determine whether the law is punitive in effect by considering the **Mendoza-Martinez** factors. **Id.** at 972.

**Lacombe**, ___ A.3d at ____, Slip Opinion at 21-22 (quoting **Muniz**, **supra**). Our Supreme Court further cited **Muniz** for the proposition that, when conducting this analysis, "only the 'clearest proof' may establish that a law is punitive in effect," and that, "when determining whether a statute is civil or punitive, we must examine the law's entire statutory scheme." **Id.**

In response to the first part of the *ex post facto* analysis, our Supreme Court noted that the Pennsylvania General Assembly expressly declared that Subchapter I "shall not be construed as punitive." **Id.** at 22. Thus, the High Court proceeded to thoroughly discuss each of the factors enumerated in **Kennedy v. Mendoza-Mendoza**, 372 U.S. 144 (1963), to determine whether Subchapter I was punitive in effect. **See Lacombe**, ____ A.3d at ___, Slip Opinion at 22-35. In balancing these factors, our Supreme Court reasoned:

As the above **Mendoza-Martinez**, analysis clearly reflects, Subchapter I effected significant changes from the original version of SORNA, retroactive application of which we found unconstitutional in **Muniz**. To summarize, we find three of the five factors weigh in favor of finding Subchapter I nonpunitive. Additionally, we give little weight to the fact Subchapter I promotes the traditional aims of punishment and give significant weight to the fact Subchapter I is narrowly tailored to its nonpunitive purpose of protecting the public. As we have not found the requisite "clearest proof" Subchapter I is punitive, we may not "override legislative intent and transform what has been denominated a civil remedy into a criminal penalty[.]" **Hudson v. United States**, 522 U.S. 93, 100 (1997), *quoting* **United States v. Ward**, 448 U.S. 242, 249 (1980) (internal quotations omitted).

**Lacombe**, ____ A.3d at ____, Slip Opinion, at 35. Thus, the High Court held "Subchapter I does not constitute criminal punishment, and the *ex post facto* claims forwarded by [Lacombe and Whitmayer] necessarily fail." **Id.**

This Court may affirm the denial of post-conviction relief on any ground supported by the record. **Commonwealth v. Benner**, 147 A.3d 915, 919 (Pa. Super. 2016). Here, McManus' second issue fails in light of the **Lacombe** decision, and he must comply with Subchapter I of SORNA II. Thus, as McManus is not entitled to relief, we affirm the order denying his petition to terminate his registration requirements.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/20