J-E02004-19

2021 PA Super 2

COMMONWEALTH OF PENNSYLVANIA :  IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
:
v.               :
:
:
CARLOS GENE MOOSE, JR.      :
:
Appellant      :  No. 1897 MDA 2014

Appeal from the Order Dated October 17, 2014
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000798-1988

BEFORE:  BOWES, J., SHOGAN, J., LAZARUS, J., OLSON, J., STABILE, J.,
DUBOW, J., KUNSELMAN, J., NICHOLS, J., and MURRAY, J.

OPINION BY NICHOLS, J.:        **FILED: JANUARY 4, 2021**

Appellant Carlos Gene Moose, Jr. appeals from the order denying his motion to enforce a negotiated plea agreement and to enjoin any requirement that he register under the Sex Offender Registration and Notification Act[1] (SORNA I). This Court granted *en banc* reargument to consider (1) whether Appellant's claims must be decided under the Post Conviction Relief Act[2] (PCRA); (2) whether **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017) applied retroactively; (3) whether **Commonwealth v. Fernandez**, 195 A.3d 299 (Pa. Super. 2018) (*en banc*), or **Commonwealth v. Johnson**, 200 A.3d 964 (Pa. Super. 2018), governed if **Muniz** applied in determining the

---

[1] The Sexual Offender Registration and Notification Act (SORNA I), 42 Pa. C.S. §§ 9799.10-9799.41 (subsequently amended 2018).

[2] 42 Pa.C.S. §§ 9541-9546.

retroactive application of SORNA. *See* Order, 1897 MDA 2014, 5/6/19, at 1-2.

In his supplemental brief, Appellant asserts that the issues set forth in this Court's order granting reargument are no longer relevant in light of the subsequent amendments to SORNA I in Acts 10 and 29 of 2018[3] (SORNA II), in particular, Subchapter I of SORNA II. In the alternative, Appellant asserts that his original plea agreement bars any obligation to register as a sex offender. For the reasons that follow, we vacate the trial court's order and remand the matter for further proceedings to consider the applicability of SORNA II.

The following background is relevant to this appeal. In October of 1987, Appellant participated in the rape and murder of a woman in York County. In May of 1995,[4] Appellant entered a negotiated guilty plea to one count each of third-degree murder, rape, and criminal conspiracy.[5] Pursuant to the plea agreement, the trial court imposed an aggregate term of fifteen to thirty years' incarceration. Pennsylvania had no laws relating to registration, community

---

[3] 2018, Feb. 21, P.L. 27, No. 10 (Act 10); 2018, June 12, P.L. 140, No. 29, (Act 29).

[4] Appellant was initially convicted following a jury trial in 1988. The Pennsylvania Supreme Court vacated Appellant's 1988 conviction in 1992 on the grounds of prosecutorial misconduct and remanded the matter for a new trial. *See Commonwealth v. Moose*, 602 A.2d 1265 (Pa. 1992).

[5] 18 Pa.C.S. §§ 2502(c), 3121(a)(1), and 903(b), respectively.

notification, or counseling provisions for convicted sex offenders at the time of Appellant's plea or the date of the underlying offense.

In December of 2011, the Pennsylvania General Assembly enacted SORNA I, which retroactively applied registration requirements to any individual who was serving a sentence for a sexually violent offense on or after the effective date of the statute. The trial court subsequently informed Appellant, who was still incarcerated, that he was considered a Tier III offender and would be subject to lifetime registration requirements.

On August 13, 2014, Appellant filed a *pro se* motion to enforce his negotiated plea agreement and to enjoin any requirement that he register under the then-existing sex offender registration scheme, SORNA I. **See** Mot. to Enforce Plea Agreement, 8/13/14. Therein, Appellant argued that "his forced compliance with the registration requirement of SORNA [I] violates due process of law, fundamental fairness, and the negotiated plea agreement entered into between him and the Commonwealth." **Id.** at 2. Appellant argued that his negotiated plea agreement "did not require him to register as a sex offender [and] must be strictly enforced." **Id.** at 3.

On October 17, 2014, the trial court denied Appellant's motion. Trial Ct. Order, 10/17/14, at 1. The trial court explained that sex offender registration requirements "could not have been a consideration" in Appellant's decision to plead guilty, as Pennsylvania did not have any laws relating to sex offender registration at the time Appellant negotiated his plea deal. **Id.** Relying on **Commonwealth v. Perez**, 97 A.3d 747, 760 (Pa. Super. 2014),

the trial court concluded that SORNA I applied retroactively to Appellant, who was still serving a sentence for rape. *Id.* After a panel of this Court affirmed the trial court's decision on appeal, Appellant filed a petition for allowance of appeal in the Pennsylvania Supreme Court.

On July 19, 2017, our Supreme Court decided *Muniz*. The *Muniz* Court held that SORNA I's registration requirements were "punitive in effect." *Muniz*, 164 A.3d at 1218. As such, the Court concluded that SORNA I violated *ex post facto* principles when applied to individuals who, like Appellant, committed a sexual offense before December 20, 2012, the effective date of SORNA I. *See id.* at 1223; *see also Commonwealth v. Lippincott*, 208 A.3d 143, 150 (Pa. Super. 2019) (*en banc*).

On February 23, 2018, our Supreme Court, by *per curiam* order, granted Appellant's petition for allowance of appeal in the instant case, vacated this Court's decision affirming the trial court's denial of Appellant's motion to enforce his plea agreement, and remanded the matter to this Court for reconsideration in light of *Muniz*. *See Commonwealth v. Moose*, No. 526 MAL 2015 (Pa. Feb. 23, 2018).

Meanwhile, SORNA II took effect. SORNA II divides sex offender registrants into two distinct subchapters—Subchapter H and Subchapter I. Amended Subchapter H includes individuals who were convicted for an offense that occurred on or after December 20, 2012 and whose registration requirements had not yet expired. *See* 42 Pa.C.S. § 9799.11(c). Subchapter I includes individuals who were convicted for an offense that occurred "on or

after April 22, 1996, but before December 20, 2012," or who were required to register under a former sexual offender registration law on or after April 22, 1996, but before December 20, 2012, and whose registration requirements had not yet expired. *See* 42 Pa.C.S. § 9799.52.

Following the remand from the Pennsylvania Supreme Court, a panel of this Court reversed the trial court's order denying relief. *See Commonwealth v. Moose*, 1897 MDA 2014 at 2 (Pa. Super. filed January 11, 2019). The majority found that this Court had jurisdiction over Appellant's motion outside of the PCRA because, like the *Fernandez* petitioners, Appellant sought to enforce the terms of a plea agreement. *Id.* at 4. Further, the majority reasoned that Appellant's position was comparable to two of the *Fernandez* petitioners, who pled guilty to offenses that did not require any period of registration at the time of their pleas. *Id.* Therefore, the majority concluded that it had jurisdiction to review Appellant's motion to enforce his plea agreement based on *Fernandez*. *Id.* at 6.

In reviewing Appellant's underlying challenge to SORNA I, the majority explained that "at the time of his offenses and his plea, Pennsylvania had not yet enacted Megan's Law legislation or, in particular, SORNA [I]." *Id.* at 10. The majority reasoned that requiring Appellant to register under SORNA I "would constitute a greater punishment than what would have been imposed under the law in effect at the time the crimes were committed. As such, retroactive application of these enhanced registration requirements runs afoul of constitutional *ex post facto* prohibitions." *Id.* at 10-11. Therefore, the

- 5 -

majority concluded that Appellant was "not required to register under SORNA. Since [Appellant's] offenses occurred prior to any version of Megan's Law or SORNA, the post-*Muniz* legislation does not apply to him." *Id.* at 11.

The dissent responded that Appellant's motion was an untimely PCRA petition for the same reasons stated in *Johnson*. *Id.* at 1 (Bowes, J., dissenting). Specifically, the dissent emphasized that Appellant pled guilty before Pennsylvania had enacted any sex offender registration laws. Therefore, the dissent concluded that Appellant could not avoid sex offender registration based on his plea agreement because "the parties clearly could not structure the plea to accommodate law that did not exist." *Id.* at 4. This Court granted *en banc* reargument on May 6, 2019.

Thereafter, on July 21, 2020, our Supreme Court issued its decision in *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020). Notably, the *Lacombe* Court rejected the Commonwealth's argument that the petitioner was "required to challenge his sex offender registration status within the confines of the PCRA." *Id.* at 617. The *Lacombe* Court also concluded that "Subchapter I is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws." *Id.* at 605-06.

**Parties' Arguments**

With the foregoing background in mind, we summarize the parties' arguments. In so doing, we note that the parties initially present a procedural dispute as to whether Appellant was required to raise his claims under the PCRA. On the merits, Appellant and the Commonwealth present two lines of

arguments directed to (1) Appellant's challenge to SORNA I, as was presented to the trial court and (2) the application of SORNA II, which Appellant raised in his brief to this Court.

Appellant argues that the trial court had jurisdiction to consider his motion to enforce the plea agreement outside of the PCRA. Appellant's Brief at 48-51. Appellant also asserts that "retroactive application of *Muniz* is unnecessary for this Court to decide . . . whether registration requirements can be enforced against [him] at this time." Appellant's Brief at 16. Appellant asserts that *Muniz* preceded the enactment of Subchapter I, which is the "sole conceivably applicable" sex offender registration scheme currently in effect. *Id.* Therefore, Appellant argues that this Court need only "address whether Subchapter I applies to Appellant and can be enforced against him. Only if a currently existing scheme actually applies and is enforceable does this Court need to go on and consider whether registration is permissible in light of Appellant's plea agreement." *Id.* at 17.

Appellant argues that Subchapter I does not apply to him, as "his triggering offenses occurred in 1987" and, because he has been incarcerated since his conviction, he was never required to register under a former version of the sex offender registration laws. Appellant's Brief at 19; *see also* 42 Pa.C.S. § 9799.52 (establishing the dates that determine whether Subchapter I applies). Further, Appellant contends that even if Subchapter I applies to him based on the terms of the statute, "it is punitive and cannot be applied retroactively." Appellant's Brief at 24.

In the alternative, Appellant contends that he is entitled to specific performance of his negotiated plea agreement, which, he alleges, set forth an agreed-upon criminal sentence on which no term of sex offender registration would apply. *Id.* at 52. Appellant also asserts that *Fernandez* controls, as he agreed to a specific term of punishment in exchange for his guilty plea. *Id.* at 54.

Therefore, Appellant contends that his plea agreement precludes him from any obligation to register as a sex offender under either version of SORNA. Appellant's Brief at 16-17, 51. Appellant argues that, although his plea agreement did not include non-registration as a term, he "pled guilty with the understanding that the Commonwealth would take no further action against him apart from his term of incarceration. In other words, by inducing [Appellant's] plea, the Commonwealth promised—implicitly if not explicitly— that all it required of him was [fifteen] to [thirty] years' incarceration." *Id.* at 55.

Appellant asserts that, under these circumstances, "this Court should apply *Fernandez*, not *Johnson*, because *Fernandez* upholds important principles of contract law, prevents unfairness, and avoids the chilling of plea bargaining that would occur if this Court endorses the imposition of requirements that did not exist—and could not have been foreseen—when Appellant agreed to plead guilty." *Id.* at 13. Appellant argues that *Fernandez* "comports with contract law by giving effect to the implicit promise that induced [Appellant] to plead guilty." *Id.* at 54. Appellant

contends that "[f]or the Commonwealth to later subject [Appellant] to sex offender registration by virtue of those convictions is a clear breach of that promise: a unilateral addition to the consequences of [Appellant's] plea that he never accepted." *Id.*

Appellant also argues that *Johnson* "ignores the contractual principles that Pennsylvania courts have applied to construe plea agreements." *Id.* at 56. Appellant acknowledges that his plea agreement did not contain any terms relating to sex offender registration, but asserts that "the *Johnson* approach places the risk of unforeseen developments wholly on defendants. Defendants must perform their end of the bargain completely, but have no recourse when the Commonwealth places additional, onerous burdens on them." *Id.* at 58. Finally, Appellant concludes that "due to the uncertainty and unfairness that the *Johnson* approach wreaks, applying it here would chill plea bargains going forward." *Id.* at 61.

The Commonwealth initially responds that Appellant's motion must be treated as a PCRA petition. Commonwealth's Brief at 29. The Commonwealth asserts that the "resolution of whether *Johnson* or *Fernandez* controls is largely based on whether this Court rules that [Appellant] is challenging the legality of his sentence." *Id.* at 37. The Commonwealth argues that *Johnson* applies in the instant matter, as both matters "involved plea agreements that existed prior to the enactment . . . of any sexual offender registration requirements. As the *Johnson* Court stated, 'by definition, the parties could

not have contemplated non-registration as a term of the plea.'" *Id.* The Commonwealth contends that, because Appellant does not have a valid plea enforcement claim, his *Muniz* claim is a challenge to the legality of his sentence that must be brought under the PCRA. *Id.*

In distinguishing *Fernandez*, the Commonwealth asserts that the *Fernandez* petitioners "entered into negotiated pleas at times where various incarnations of Megan's Law existed and where the parties could negotiate the registration requirements." *Id.* at 37. Therefore, the Commonwealth contends that, unlike Appellant, the *Fernandez* petitioners were not limited to challenging the legality of their sentence. *Id.* at 37-38.

On the merits, the Commonwealth similarly argues that because Appellant's negotiated plea agreement did not contain terms relating to sex offender registration, he has "no specific plea bargain to enforce" with respect to sex offender registration. *Id.* at 21. Further, because sex offender registration laws were not in effect at the time of Appellant's plea, the Commonwealth asserts that "the parties could not have contemplated a lack of registration as a term of the plea bargain." *Id.* at 11. The Commonwealth concludes that, because Appellant's plea agreement did not contain a term relating to sex offender registration, he "cannot establish a plea bargain that requires enforcement." *Id.* at 21. As such, the Commonwealth argues that *Johnson* controls, and that Appellant is not entitled to relief from SORNA I based on *Muniz*. *Id.* at 16.

In response to Appellant's challenges to his obligation to register under Subchapter I, the Commonwealth contends that it "is not germane to resolution of [Appellant's] appeal," as he filed the original motion to enforce his plea agreement based on SORNA I. **Id.**

### Preliminary Procedural Matters

Initially, we resolve the parties' dispute as to whether Appellant was required to challenge his sex offender registration requirements in a PCRA petition, such that Appellant's failure to establish a PCRA timeliness exception would preclude a court for entertaining the merits of his claim. We conclude that our Supreme Court's recent decision in **Lacombe** is dispositive.

Briefly, we note that following **Muniz**, petitioners seeking relief from SORNA I's registration requirements were required to raise such claims in a timely PCRA petition. **See, e.g.**, **Commonwealth v. Greco**, 203 A.3d 1120, 1123 (Pa. Super. 2019) (discussing **Muniz** and concluding that because the "punitive nature of [SORNA I] implicates the legality of a sex offender's sentence . . . claims challenging application of SORNA's registration provisions – unlike prior versions of Megan's Law – are properly considered under the PCRA"); **Commonwealth v. Murphy**, 180 A.3d 402, 405 (Pa. Super. 2018) (affirming the dismissal of an untimely PCRA petition and stating that the petitioner's "reliance on **Muniz** cannot satisfy the 'new retroactive right' exception" to the PCRA time-bar); **see also, e.g.**, **Commonwealth v. Rivera-Figueroa**, 174 A.3d 674, 678-79 (Pa. Super. 2017) (vacating the trial

court's order denying the petitioner's timely PCRA petition and remanding the matter to the trial court for the petitioner to argue *Muniz*)).

In *Johnson*, the petitioner filed a petition for writ of *habeas corpus* and challenged his obligation to register as a sex offender under SORNA I. *Johnson*, 200 A.3d at 966. In that case, the petitioner's conviction arose from a 1992 *nolo contendere* plea, which was completed three years prior to Pennsylvania's first iteration of the sex offender registration laws. Following the enactment of SORNA I, the petitioner challenged his registration requirements based, in part, on his plea agreement. *Id.* at 965. On appeal, a panel of this Court held that the petitioner's *habeas* filing should have been treated as an untimely PCRA petition. *Id.* at 967.

The *Johnson* Court acknowledged that a petitioner could seek enforcement of the negotiated terms of a plea agreement outside the timeliness requirements of the PCRA. *Id.* However, the Court concluded that the "plea enforcement theory" did not apply to the petitioner, who pled guilty before sex offender registration laws went into effect. *Id.* Specifically, the *Johnson* Court reasoned that it could not "apply *Muniz* via a plea enforcement theory, as the parties clearly could not structure the plea to accommodate law that did not exist." *Id.* at 968. Further, although the *Johnson* Court acknowledged that SORNA I's registration requirements were "in fact punitive post-*Muniz*," it nonetheless declined to grant relief, noting that "the PCRA clearly offers a remedy for the requested relief, *i.e.* the retroactive application of *Muniz*." *Id.*

As discussed previously, the **Lacombe** Court emphasized that petitioners may challenge the application of a sexual offender registration statute outside the framework of the PCRA. **Lacombe**, 234 A.3d at 617. Specifically, the Court explained:

This Court has not yet required that sexual offender registration statutes be challenged through the PCRA or some other procedural mechanism. Indeed, we have consistently decided cases regarding sexual offender registration statutes that were challenged via different types of filings. **See Muniz**, [164 A.3d at 1208] (successful challenge to constitutionality of SORNA via direct appeal), **Commonwealth v. Martinez**, 147 A.3d 517, 523 (Pa. 2016) (successful challenge to increase of registration term through "Petition to Enforce Plea Agreement or for a Writ of *Habeas Corpus*" where PCRA petition would have been untimely), **A.S. v. Pa. State Police**, 143 A.3d 896, 903 n.7 (Pa. 2016) (successful challenge to registration term through mandamus action against PSP), [**Commonwealth v. Williams**, 832 A.2d 962, 972 (Pa. 2003) (**Williams II**)] (unsuccessful challenge to constitutionality of Megan's Law II through "Motion for Extraordinary Relief" and "Motion for Relief"). Our approach in this regard takes into account the fact that frequent changes to sexual offender registration statutes, along with more onerous requirements and retroactive application, complicate registrants' ability to challenge new requirements imposed years after their sentences become final.

This is especially so under the PCRA as many registrants . . . would be ineligible for relief on timeliness grounds. **See** 42 Pa.C.S. § 9545(b)(1) (PCRA petition must be filed within one year of judgment of sentence becoming final unless exception applies). Other registrants may be ineligible because their sentence has expired while their registration requirements continue. **See** 42 Pa.C.S. § 9543(a)(1) (PCRA petitioner must be serving sentence to be eligible for relief). Both situations arise from the fact that the registration period does not begin until registrants are released from prison, which may be well after their sentence has become final or may signal the completion of their sentence. Accordingly, we decline to find the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes and we thus conclude the trial court

- 13 -

had jurisdiction to consider Lacombe's "Petition to Terminate His Sexual Offender Registration Requirements."

*Id.* at 617-18. (some formatting altered).

Here, Appellant filed a motion challenging his obligation to register as a sex offender based on his negotiated plea agreement. In light of our Supreme Court's decision in **Lacombe**, we conclude that Appellant was not required to challenge his registration requirements under the PCRA.[6] **See id**. Therefore, the trial court properly exercised jurisdiction over Appellant's motion.

### Effect of Appellant's Plea Agreement

We next consider the issue of whether Appellant's negotiated plea agreement affects his obligation to register as a sex offender.

The law regarding the enforcement of plea agreements is well established.

> Plea bargaining is not some adjunct to the criminal justice system; it is the criminal justice system. Accordingly, it is critical that plea agreements are enforced, to avoid any possible perversion of the plea bargaining system. The disposition of criminal charges by agreement between the prosecutor and the accused, . . . is an essential component of the administration of justice. Properly administered, it is to be encouraged. In this Commonwealth, the practice of plea bargaining is generally regarded favorably, and is legitimized and governed by court rule. . . . A "mutuality of advantage" to defendants and prosecutors flows from the ratification of the bargain.
>
> *     *     *

---

[6] To the extent prior decisions of this Court, including **Johnson**, concluded that petitioners are required to challenge their sex offender registration requirements in a timely PCRA petition, that pronouncement is overruled.

- 14 -

Although a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law standards. Furthermore, disputes over any particular term of a plea agreement must be resolved by objective standards. A determination of exactly what promises constitute the plea bargain must be based upon the totality of the surrounding circumstances and involves a case-by-case adjudication.

Any ambiguities in the terms of the plea agreement will be construed against the Government. Nevertheless, the agreement itself controls where its language sets out the terms of the bargain with specificity. Regarding the Commonwealth's duty to honor plea agreements, well-settled Pennsylvania law states:

Our courts have demanded strict compliance with that duty in order to avoid any possible perversion of the plea bargaining system, evidencing the concern that a defendant might be coerced into a bargain or fraudulently induced to give up the very valued constitutional guarantees attendant the right to trial by jury.

Whether a particular plea agreement has been breached depends on what the parties to the agreement reasonably understood to be the terms of the agreement.

*Commonwealth v. Farabaugh*, 136 A.3d 995, 1001-02 (Pa. Super. 2016)

(internal citations and quotation marks omitted).

[T]he convicted criminal is entitled to the benefit of his bargain through specific performance of the terms of the plea agreement. Thus, a court must determine whether an alleged term is part of the parties' plea agreement. . . . If the answer to that inquiry is affirmative, then the convicted criminal is entitled to specific performance of the term.

*Martinez*, 147 A.3d at 533 (some internal citations omitted). Further, as is true of all contracts, "[t]he laws that are in force at the time the parties enter into a contract are merged with the other obligations that are specifically set forth in the agreement. Statutes generally should not be applied retroactively

- 15 -

to a contractual relationship where the application would alter existing obligations." *Empire Sanitary Landfill*, *Inc. v. Com., Dept. of Environmental Resources*, 684 A.2d 1047, 1059 (Pa. 1996) (citations omitted).

Prior to *Muniz*, a defendant's obligation to register as a sex offender was considered a "collateral consequence" of a guilty plea, as those conditions were held to be non-punitive and were therefore unrelated to "the length or nature of the sentence." *Commonwealth v. Leidig*, 956 A.2d 399, 404 (Pa. 2008) (citation omitted) (discussing a former sex offender registration scheme and noting that, because registration was non-punitive, the "logical extension . . . is that the registration requirements . . . are collateral, not direct, consequences of conviction").

Therefore, when a defendant sought to avoid sex offender registration requirements based on a negotiated plea, courts could only grant relief in cases where non-registration or a specified period of registration was a term of the agreement. *Commonwealth v. Nase*, 104 A.3d 528, 532-33 (Pa. Super. 2014) (reversing the trial court's order denying the appellant's motion to enforce a plea agreement that contained an express term relating to sex offender registration and holding that "the collateral consequence construct does not eliminate the requirement that courts enforce bargained-for exchanges where the parties negotiate over a collateral consequence of a plea"); *see also Commonwealth v. Hainesworth*, 82 A.3d 444, 448 (Pa. Super. 2013)) (holding that, in a plea enforcement case concerning sex

- 16 -

offender registration requirements, "the dispositive question is whether non-registration was a term of [the defendant's] plea agreement").

In **Martinez**, which was decided before **Muniz**, the Pennsylvania Supreme Court determined that the petitioners were entitled to serve the registration terms set forth in their plea agreements, rather than those later prescribed by SORNA I. **Martinez**, 147 A.3d at 532-33. In reaching this conclusion, the **Martinez** Court explained:

> When a question arises as to whether a convicted criminal is entitled to specific performance of a term of his plea agreement, the focus is not on the nature of the term, *e.g.*, whether the term addressed is a collateral consequence of the defendant's conviction. Rather, quite simply, the convicted criminal is entitled to the benefit of his bargain through specific performance of the terms of the plea agreement. Thus, a court must determine whether an alleged term is part of the parties' plea agreement. If the answer to that inquiry is affirmative, then the convicted criminal is entitled to specific performance of the term.

**Id.** (citations and footnote omitted). In each of the cases considered in **Martinez**, the Supreme Court emphasized that Megan's Law was in effect at the time of the plea agreement, the defendants had pled guilty in exchange for a specific term of sex offender registration, and that, therefore, the defendants were entitled to the benefit of their bargain. **Id.** at 533.

Following **Muniz**, this Court recognized that SORNA I's sex offender registration requirements were "no longer merely a collateral consequence but rather punishment." **Commonwealth v. Hart**, 174 A.3d 660, 667 (Pa. Super. 2017). Further, this Court noted that "[a]lthough **Leidig** is not specifically mentioned by the **Muniz** Court, it appears that the **Muniz** decision

impliedly overrules **Leidig** to the extent that **Leidig** determined sex offender registration requirements to be a collateral consequence." **Id.** at n.10.

In **Fernandez**, an *en banc* panel of this Court addressed whether the appellants, who entered negotiated guilty pleas and later violated their probation, could be ordered to register under SORNA I. **Fernandez**, 195 A.3d at 301. The **Fernandez** appellants, who were ordered to comply with SORNA I as part of their violation of probation (VOP) sentences, filed motions to enforce the terms of their respective plea agreements. **Id.** at 302. In each case, the trial court denied relief based on this Court's decision in **Commonwealth v. Partee**, 86 A.3d 245 (Pa. Super. 2014), concluding that the appellants "were not entitled to specific performance of the negotiated plea agreement because [they] had violated the terms of their plea agreements." **Id.**

In a consolidated appeal to this Court, we considered whether the appellants could be ordered to comply with the new registration conditions assigned to their crimes under SORNA I, in light of **Muniz**. **Id.** The **Fernandez** Court noted that the facts of the appellants' cases were identical to **Partee**, as each appellant had violated the terms of his respective plea agreement. **Id.** at 308-09. However, the **Fernandez** Court reiterated that following **Muniz**, a trial court could not retroactively increase a defendant's registration requirements under SORNA I. **Id.** at 301. Therefore, the Court concluded that **Muniz** abrogated **Partee**, and that although the appellants

violated their probation sentences, "the reclassifications of the [a]ppellants after the effective date of SORNA cannot stand." *Id.* at 309-10.

Importantly, the *Fernandez* Court did not condition its conclusion on whether sex offender registration was a negotiated term of the appellants' plea agreements. Instead, the *Fernandez* Court explained:

> To the extent the Commonwealth claims [the a]ppellants failed to demonstrate their plea agreements precluded lifetime registration, *Muniz* renders such a demonstration unnecessary. Following *Muniz*, SORNA's sexual offender requirements may not be imposed retroactively on any defendant, regardless of whether the defendant accepted a plea bargain or was convicted at trial. Even offenders who, like [the a]ppellants, were sentenced before SORNA became law, have since violated the terms of their probation, and have been resentenced, are not subject to retroactive application of SORNA's requirements.

*Id.* at 310. Ultimately, the *Fernandez* Court held that the appellants were "subject to the original periods of sexual offender registration and conditions imposed at the time of their plea bargains, if applicable."[7] *Id.* at 311.

As noted above, however, *Johnson* reasoned that the plea enforcement theory did not apply to a petitioner who pled guilty "prior to the enactment of any sexual offender laws." *Johnson*, 200 A.3d at 967. *Johnson* relied on *Farabaugh* for the proposition that "where a plea bargain is structured so the defendant will not have to register or report as a sex offender or he will have to register and report for a specific time[,]" then the "'collateral consequence'

___

[7] Two of the petitioners, Colbert and Wilson, pled guilty to offenses that did not require sex offender registration at the time they entered their plea agreements. Nonetheless, sex offender laws existed and applied to other sexual offenses at that time.

concept attributed generally to sex offender registration requirements does not trump enforcement of the plea bargain." *Id.* at 967-68 (citing *Farabaugh* 136 A.3d at 1002). The *Johnson* panel emphasized that because sex offender registration requirements did not exist at the time the petitioner pled guilty, "[b]y definition, the parties could not have contemplated non-registration as a term of the plea." *Id.* at 967. Therefore, the *Johnson* Court stated that it could not "apply *Muniz* via a plea enforcement theory, as the parties clearly could not structure the plea to accommodate law that did not exist." *Id.* at 968.

In sum, our review of the plea enforcement cases, together with the more recent decisions applying *Muniz*, discussed herein, clarifies that a petitioner's negotiated guilty plea precludes subsequent application of a **punitive** registration scheme because it would effectively alter the petitioner's agreed-upon sentence. This is so even where a negotiated plea agreement is silent regarding sex offender registration. Moreover, where a petitioner pleads guilty in exchange for a specific sentence, he is entitled to the benefit of that bargain.

Given the factual and procedural circumstances of this case, we decline to apply the reasoning suggested in the *Johnson* case that, in all instances, the absence of a specific term in a plea agreement precludes a party from obtaining relief. *See Johnson*, 200 A.3d at 968 (stating that "we cannot apply *Muniz* via a plea enforcement theory, as the parties could not structure the plea to accommodate law that did not exist"). When a registration

requirement is punitive, it effectively increases a defendant's agreed-upon criminal sentence. Such an increase would not only violate *ex post facto* principles, but would alter a fundamental term of the bargain as to the sentence. As this Court noted in ***Farabaugh***, "we refuse to allow [a petitioner's] plea bargain to be reformed with the addition of new conditions which did not exist when he entered the plea agreement. To do otherwise would play 'gotcha' with a revered and favored method of resolving criminal cases." ***Farabaugh*** 136 A.3d at 1003 (citations omitted). In other words, because punitive registration requirements constitute "criminal punishment," a petitioner may avoid such requirements by demonstrating that application of those requirements would exceed the terms of his agreed-upon sentence. ***See Farabaugh*** 136 A.3d at 1003 (citations omitted).

However, when a registration scheme is **not punitive**, it constitutes a collateral consequence of a guilty plea. ***See Hart***, 174 A.3d at 667. Further, because non-punitive registration requirements are not criminal punishment, they would not materially alter a negotiated term establishing a petitioner's criminal sentence. ***See Lacombe***, 234 A.3d at 606; ***see also Commonwealth v. Smith***, --- A.3d ---, 1011 MDA 2019, 2020 WL 5755494 at *3 (Pa. Super. filed Sep. 28, 2020) (discussing ***Lacombe*** and ***Leidig*** and reiterating that "non-punitive, administrative requirements are merely collateral consequences of a criminal conviction"). Under these circumstances, a petitioner must demonstrate that non-registration, or a specific term of registration, was part of the negotiated plea. ***See***

- 21 -

*Hainesworth*, 82 A.3d at 448 (stating that "the dispositive question is whether registration was a term of the bargain struck by the parties"); *see also Martinez*, 147 A.3d at 531; *see also Johnson*, 200 A.3d at 969.

Here, to the extent Appellant challenged his obligation to register under SORNA I, we agree that he is entitled to relief. We recognize that Appellant's plea agreement did not contain any terms related to sex offender registration. Moreover, at the time Appellant pled guilty, Pennsylvania had not yet enacted laws requiring sex offender registration. Therefore, as noted by the trial court, non-registration could not have been a consideration in Appellant's decision to plead guilty. *See* Trial Ct. Order, 10/17/14, at 1. Nonetheless, Appellant's plea agreement set forth an agreed-upon sentence of fifteen to thirty years' incarceration. Given our Supreme Court's decision in *Muniz*, retroactive application of SORNA I's punitive registration scheme would effectively increase Appellant's sentence. *See Muniz*, 164 A.3d at 1218; *see also Fernandez*, 195 A.3d at 310. Therefore, although Appellant's plea agreement did not specifically preclude or limit sex offender registration, we nonetheless conclude that Appellant cannot be ordered to comply with registration requirements that would impose additional criminal punishment beyond what was stated in the plea agreement. *See Farabaugh* 136 A.3d at 1003 (citations omitted); *see also Hart*, 174 A.3d at 667; *see also Lacombe*, 234 A.3d at 606.

**Applicability of SORNA II**

Finally, to the extent Appellant presently challenges his obligation to register under Subchapter I, the trial court has not had the opportunity to address Appellant's claims. Therefore, any issues relating to the application of Subchapter I are not properly before us. **See** Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Accordingly, in light of the issues discussed in Appellant's brief, we remand the matter to the trial court for further proceedings for the trial court to address Appellant's claims and determine whether Appellant is obligated to register as a sex offender under Subchapter I. **See Smith**, 2020 WL 5755494 at *3.

In sum, we vacate the portion of the trial court's order requiring Appellant to register under SORNA I and remand for further proceedings consistent with this opinion.[8]

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/04/2021

---

[8] On remand, Appellant may file a supplemental petition raising his instant claims relating to his obligation to register under Subchapter I.