IN THE COMMONWEALTH COURT OF PENNSYLVANIA

C.M.,                                          :
                    Petitioner                 :
                                               :
         v.                                    :
                                               :
Pennsylvania State Police,                     :    No. 47 M.D. 2021
                    Respondent                 :    Argued: December 15, 2021


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge[1]
           HONORABLE MARY HANNAH LEAVITT, Judge (P.)[2]
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION
BY JUDGE FIZZANO CANNON              FILED: January 28, 2022


        Before this Court, in our original jurisdiction, is an application for
summary relief by Petitioner, C.M.,[3] seeking removal from Pennsylvania's sex

_____

        [1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn
Jubelirer became President Judge.

        [2] This matter was assigned to the panel before January 3, 2022, when President Judge
Emerita Leavitt became a senior judge on the Court.

        [3] In response to C.M.'s application for summary relief, the Pennsylvania State Police (PSP)
denied that C.M. was entitled to relief and requested that this Court instead enter summary relief
in favor of the PSP. However, that request is not properly before this Court, as the PSP filed no
application for relief. *See Bradley v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth., No. 132 M.D. 2019,
filed June 23, 2021), slip op. at 19 n.20, 2021 WL 2580602, at *24 n.20 (unreported) (despite
petitioner's failure to present any claim on which he could recover, "[i]n the absence of an

offender registry maintained by the Pennsylvania State Police (PSP) and exclusion from any future registration requirement under the Sexual Offender Registration and Notification Act (SORNA II).[4] For the reasons discussed herein, C.M.'s application for summary relief is denied.

## I. Background

C.M. participated in a rape and murder in 1987. *See* Pet. for Review, ¶ 4; *Com. v. [C.M.]*, 245 A.3d 1121, 1124 (Pa. Super. 2021) (*C.M. I*), *appeal denied*, (Pa., No. 53 MAL 2021, filed Dec. 7, 2021), 2021 WL 5810455 (Table) (*C.M. II*). In 1995,[5] he entered a plea agreement in which he pleaded guilty to rape, criminal conspiracy to commit rape, and third-degree murder. Pet. for Review, ¶ 4. He received a sentence of 15 to 30 years' incarceration. *Id.* He was released from prison in late 2020. *See id.*, ¶ 10.

According to C.M., the PSP informed him upon his release that he was required to register for life as a convicted sex offender under Subchapter I of SORNA II, 42 Pa.C.S. § 9799.52. He then commenced this action seeking removal

---

application for summary relief filed by [respondent], the Court is without a procedural vehicle through which to dismiss the original jurisdiction . . . action").

[4] Act of February 21, 2018, P.L. 27, No. 10, 42 Pa.C.S. §§ 9799.10-9799.75, *as amended* by the Act of June 12, 2018, P.L. 140, No. 29.

[5] C.M. was initially convicted in 1988, but the Pennsylvania Supreme Court later vacated that conviction and remanded the matter for a new trial. *Com. v. [C.M.]*, 245 A.3d 1121, 1124 n.4 (Pa. Super. 2021) (*C.M. I*), *appeal denied*, (Pa., No. 53 MAL 2021, filed Dec. 7, 2021) (*C.M. II*), 2021 WL 5810455 (Table) (citing *Com. v. [C.M.]*, 602 A.2d 1265 (Pa. 1992)).

from the sex offender registry and exclusion from any future registration requirement.[6]

C.M. sought a preliminary injunction seeking removal of his information from the sex offender registry pending this Court's decision in the case. On May 6, 2021, this Court issued a single-judge opinion and order denying the injunction. *C.M. v. Pa. State Police* (Pa. Cmwlth., No. 47 M.D. 2021, filed May 6, 2021) (*C.M. III*). This Court found C.M. failed to show either irreparable harm from the presence of his information on the registry or a likelihood of prevailing on the merits of his claim. *Id.*, slip op. at 5-6.

C.M. then filed the instant application for summary relief.[7]

---

[6] C.M. has been attempting since at least 2014 to eliminate his lifetime registration obligation, which was first imposed under the statute known as Megan's Law II, *formerly* 42 Pa.C.S. §§ 9791-9799.7. *See* Pet. for Review, ¶ 6; *C.M. I*, 245 A.3d at 1124. After several years of appeals, in an opinion and order dated January 4, 2021, the Superior Court remanded that matter for the trial court to consider the very issue C.M. raises here, *i.e.*, whether he is subject to the registration requirement of Subchapter I of SORNA II. *C.M. I*, 245 A.3d at 1126 ("[C.M.] argues that Subchapter I [of SORNA II] does not apply to him, as 'his triggering offenses occurred in 1987' and, because he has been incarcerated since his conviction, he was never required to register under a former version of the sex offender registration laws.") & 1133-34 (remanding to the trial court to "determine whether [C.M.] is obligated to register as a sex offender under Subchapter I"). C.M. filed a petition for allowance of appeal, which held the remand in abeyance. *See* Pet. for Review, ¶ 15. Our Supreme Court denied the petition for allowance of appeal on December 7, 2021. *C.M. II*. As of the filing date of this opinion, the last entries on the trial court docket are notice on January 3, 2022, of the denial of the petition for allowance of appeal, and receipt of the Superior Court's remand decision on January 4, 2022. The trial court docket is available at https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-67-CR-0000798-1988& dnh=zVlsmkSOd94WjCZzBh%2Fkqw%3D%3D (last visited Jan. 27, 2022). *See* Court of Common Pleas of York County, No. CP-67-CR-0000798-1988.

[7] Pennsylvania Rule of Appellate Procedure 1532(b) permits filing of an application for summary relief at any time after a petition for review has been filed in an original jurisdiction matter. Pa.R.A.P. 1532(b). Like summary judgment, summary relief is appropriate when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Haveman v. Bureau of Prof. & Occupational Affairs, State Bd. of Cosmetology*, 238 A.3d 567, 570-71 (Pa. Cmwlth. 2020).

## II. Issues

C.M. challenges the application of Subchapter I of SORNA II to him. He committed his crimes in 1987 and was not released from prison until late 2020. He argues that he was first "required to register" under Megan's Law II "upon release" from prison in 2020. Pet. for Review, ¶ 22. Subchapter I, however, applies only to offenders who were "required to register . . . on or after April 22, 1996, but before December 20, 2012." 42 Pa.C.S. § 9799.52. C.M. reasons that as he was incarcerated throughout that time period, he was not "required to register" under Megan's Law II because he had not been released. Pet. for Review, ¶ 21. Therefore, he contends he is not subject to any registration requirement under the plain language of Subchapter I of SORNA II. C.M. argues that in *Smolsky v. Blocker* (Pa. Cmwlth., No. 254 M.D. 2018, filed May 20, 2019), 2019 Pa. Commw. Unpub. LEXIS 293 (unreported),[8] this Court construed the statutory language at issue in exactly the way C.M. seeks to have it construed in this case. In addition, C.M. asserts that the legislative findings and purpose behind the statutory framework creating the sex offender registry are inapplicable, as is any suggestion that C.M.'s reading of the statute yields an absurd result, because the language of the statute is clear and this Court should not ignore the letter of the law in favor of its spirit.

In response, the PSP observes that Megan's Law II, which became effective in 2000, while C.M. was incarcerated, did not exclude incarcerated persons from the lifetime registration requirement. Br. of Respondent at 5-6 (quoting *former* 42 Pa.C.S. § 9795.1). The PSP asserts that the obligation of lifetime registration arose on the effective date of Megan's Law II, even though the duty to begin

---

[8] Under Section 414(a) of this Court's Internal Operating Procedures, unreported decisions of this Court issued after January 15, 2008 may be cited for their persuasive value, but not as binding precedents. 210 Pa. Code § 69.414(a).

providing residence information to the registry began only upon release because until that time, an incarcerated person's address – *i.e.*, in prison – was known. Br. of Respondent at 5-7 (citing *former* 42 Pa.C.S. § 9795.2).

### III. Discussion

Subchapter I of SORNA II provides, in pertinent part: "This subchapter shall apply to individuals who were . . . required to register with the [PSP] under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired." 42 Pa.C.S. § 9799.52(2). Here, C.M. was convicted in 1995 of sex offenses committed in 1987, but he was incarcerated at the time Megan's Law II was enacted and was, therefore, subject to its provisions. *See former* 42 Pa.C.S. § 9795.1 (imposing registration requirement on individuals "convicted" of listed crimes and not excepting those already incarcerated for such crimes); *Dunyan v. Pa. State Police* (Pa. Cmwlth., No. 75 M.D. 2014, filed Dec. 17, 2014), slip op. at 4-5, 2014 Pa. Commw. Unpub. LEXIS 722, at *4-5 (unreported) (upholding application of lifetime registration requirements first applied under Megan's Law II to individual convicted before its enactment but still incarcerated on its effective date); *accord Com. v. Gaffney*, 733 A.2d 616, 622 (Pa. 1999) (upholding application of registration requirements of Section 9793 of Megan's Law I,[9] *formerly* 42 Pa.C.S. § 9793, to individual convicted of offense committed before its enactment).

---

[9] *Formerly* 42 Pa.C.S. §§ 9791-9799.6. Megan's Law II increased the registration period for some offenses from 10 years to lifetime registration.

Before this Court, C.M. does not assert any challenge to the retroactive application of Subchapter I as a constitutional violation.[10] He raises solely an issue of pure statutory construction. As explained above, he contends that he was not "required to register" under a former statute, Megan's Law II, which was in effect in various forms from 2000 until 2012, because he was incarcerated throughout that period and was not released from prison, thus triggering his registration requirement, until 2020. Subchapter I of SORNA applies to offenders who were "required to register . . . on or after April 22, 1996, but before December 20, 2012." 42 Pa.C.S. § 9799.52(2). C.M. reasons that he was not "required to register" during that period because he had not been released. Pet. for Review, ¶¶ 20-21. In other words, because C.M. was not released until 2020, he insists he was not required to register before December 20, 2012, and is, accordingly, not subject to registration under SORNA II. *Id.* We disagree.

Section 9795.1 of Megan's Law II was titled "Registration." *Former* 42 Pa.C.S. § 9795.1. Section 9795.1(b)(2) of Megan's Law II imposed a lifetime registration requirement on individuals convicted of listed offenses, including rape, one of the crimes of which C.M. was convicted. *Formerly* 42 Pa.C.S. § 9795.1(b)(2). As the PSP observes, nothing in that provision excepted already-incarcerated individuals from its application. *See* Br. of Respondent at 5-6 (quoting *former* 42 Pa.C.S. § 9795.1); *Dunyan*, slip op. at 4-5.

The point in time at which registration would begin, however, was contained in a separate section of Megan's Law II, Section 9795.2, titled "Registration Procedures and Applicability." *Formerly* 42 Pa.C.S. § 9795.2.

---

[10] Notably, in *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020), our Supreme Court held that Subchapter I of SORNA II is non-punitive and does not violate constitutional prohibitions against *ex post facto* laws. *Id.* at 626-27.

Section 9795.2(a)(1) provided: "Offenders and sexually violent predators shall be required to register all current residences or intended residences with the [PSP] upon release from incarceration, upon parole from a state or county correctional institution, or upon the commencement of a sentence of intermediate punishment[11] or probation." *Formerly* 42 Pa.C.S. § 9795.2(a)(1) (2000).

Reading Sections 9795.1 and 9795.2 together, it is apparent that the obligation to register arose under Section 9795.1 upon the enactment of Megan's Law II with regard to individuals incarcerated for sex offenses on that date. Therefore, we agree with the PSP that C.M., who was incarcerated on the effective date of Megan's Law II, became obligated for lifetime registration *on that date*.

By contrast, Section 9795.2, which expressly related only to registration *procedures*, merely provided the timing and mechanism of when and how performance of the registration obligation would begin. Thus, only C.M.'s duty to begin performing that obligation, not the obligation itself, arose upon his subsequent release. The date of his release was irrelevant to his registration obligation.

As discussed above, Subchapter I of SORNA II applies to individuals who were "required to register with the [PSP] under a former sexual offender registration law . . . on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired." 42 Pa.C.S. § 9799.52(2). C.M. incurred a lifetime registration requirement upon the effective date of Megan's Law II in 2000, *i.e.*, after April 22, 1996, but before December 20, 2012. As a lifetime requirement, it has not expired. Accordingly, C.M. must register with the PSP for his lifetime.

---

[11] "Intermediate punishment" includes statutorily authorized sentencing alternatives such as home confinement and electronic monitoring. *Com. v. Wegley*, 829 A.2d 1148, 1148 n.1 (Pa. 2003) (citing 42 Pa.C.S. § 9763(b)(16), (17); 37 Pa. Code § 451.51(a)(1)-(3)).

C.M.'s reliance on *Smolsky* is unavailing. In *Smolsky*, this Court issued an unreported panel decision addressing the same issue in analogous circumstances. This Court found the petitioner was entitled to have his name removed from the sex offender registry and was not subject to future registration requirements. *Id.*, slip op. at 5-6. C.M. therefore relies heavily on *Smolsky* as persuasive. However, this Court expressly distinguished *Smolsky* in its single-judge opinion in this case. The Court observed that the PSP did not raise in *Smolsky* the opposing arguments that it raises here, and further, that *Smolsky* is not precedential. *C.M. III*, slip op. at 5 n.3. A review of the *Smolsky* opinion reveals that this Court expressly directed supplemental briefing on the applicability of the registration requirement in that case, but neither party provided any analysis in its supplemental brief that was helpful to the Court. *Smolsky*, slip op. at 4 n.4 (stating that "[a]lthough they filed their supplemental briefs in a timely fashion, [the parties] failed to adequately address the question posed by this Court or to provide any meaningful legal analysis to assist this Court in deciding whether the provisions of [SORNA II] apply to Mr. Smolsky"). It was not this Court's function to develop the parties' arguments for them. *See Com. v. Brown*, 196 A.3d 130, 185 n.21 (Pa. 2018) (declining to analyze cited decisions where advocate failed to develop an accompanying argument; appellate courts are "neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter.") (citation omitted); *Com. v. Williams*, 782 A.2d 517, 532 (Pa. 2001) (stating that "[t]he result [of a court's development of argument for a party] is a decision on the issue without the benefit of helpful advocacy from either side. This is not a model for sound decision-making."); *Hohensee v. Luger*, 412 A.2d 1111, 1112 (Pa. Cmwlth. 1980) (opining that the "judicial role must be to adjudicate

coherent claims, not to assume the burdens of the advocate or litigant"). Accordingly, we conclude that our decision in *Smolsky* is not persuasive here.

Moreover, as the PSP aptly points out in its brief, the result of C.M.'s construction of Subchapter I would have absurd results. Br. of Respondent at 7-8. For example, if two persons committed sex offenses on the same day and were incarcerated at the same time, and one of them, who committed a less serious offense, was released before December 20, 2012, but the other, who committed the more serious crime, was not released until after December 20, 2012, C.M.'s reading of the statute would mean that the offender committing the less serious crime would have to register and the offender committing the more serious crime – and thus posing the more serious risk of harm to the public – would not. *Id.* Such a result would directly contravene the legislative policy underlying both Megan's Law II and SORNA II to protect "the safety and general welfare" of Pennsylvania citizens. *Formerly* 42 Pa.C.S. § 9791(b); 42 Pa.C.S. § 9799.11(b)(1).

## IV. Conclusion

For the foregoing reasons, C.M.'s application for summary relief is denied.

_____
CHRISTINE FIZZANO CANNON, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

C.M.,                                           :
          Petitioner                 :
                           :
      v.                                      :
                           :
Pennsylvania State Police,                       :     No. 47 M.D. 2021
          Respondent                 :

## O R D E R

AND NOW, this 28th day of January, 2022, the application for summary relief filed by Petitioner, C.M., is DENIED.

 

_____
CHRISTINE FIZZANO CANNON, Judge