J-S47004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FLOYD BROWN | : | |
| | : | |
| Appellant | : | No. 878 EDA 2025 |

Appeal from the PCRA Order Entered February 25, 2025
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0609041-1983

BEFORE: PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:                **FILED MARCH 6, 2026**

Floyd Brown appeals *pro se* from the order entered in the Court of Common Pleas of Philadelphia County dismissing his petition for *habeas corpus* relief as an untimely Post Conviction Relief Act ("PCRA")[1] petition. After careful review, we affirm.

On September 20, 1983, Brown entered a counseled negotiated guilty plea to second-degree murder[2] for his involvement in an incident that occurred on May 11, 1983, during which he fired a gun and killed the victim in the course of committing a robbery. In exchange for his plea, the Commonwealth agreed to *nolle pros* his remaining charges of robbery, criminal conspiracy,

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] 18 Pa.C.S.A. §§ 2502, 2503.

carrying firearms on public streets or public property in Philadelphia, and possessing instruments of crime.[3] After conducting an extensive oral plea colloquy on the record, the court accepted Brown's plea and imposed a mandatory sentence of life imprisonment. Brown did not file post-sentence motions or pursue a direct appeal from his judgment of sentence. Brown unsuccessfully pursued collateral relief by filing three PCRA petitions on April 25, 2000, August 24, 2012, and December 26, 2017.

On August 8, 2023, Brown filed, *pro se*, the instant "Petition to Enforce Specific Performance of Negotiated Plea Agreement." Writ of *Habeas Corpus*, 8/8/23. In his petition, Brown sought *habeas corpus* relief, pursuant to 42 Pa.C.S.A. § 6503, and claimed that he must be immediately considered for parole to effectuate the terms of his plea agreement. On January 22, 2025, the court filed notice of its intent to dismiss Brown's petition without a hearing, treating it as an untimely PCRA petition, with no timeliness exception pleaded or proven. **See** Pa.R.Crim.P. 907; Rule 907 Notice, 1/22/25, at 1. Brown did not respond, and on February 25, 2025, the court entered an order dismissing his petition. In an accompanying opinion, the court reiterated that Brown's petition was an untimely PCRA petition which the court lacked jurisdiction to review because Brown failed to plead or prove a statutorily enumerated exception to the PCRA's timeliness requirement. **See** Trial Court Opinion,

_____

[3] 18 Pa.C.S.A. §§ 3701, 903, 6108, and 907(a), respectively.

2/25/25, at 2, 4 (unpaginated). In the alternative, the court opined that Brown failed to demonstrate he was entitled to his requested relief of specific performance under a contract theory. *See id.* at 5 n.9 (unpaginated). Brown timely filed a notice of appeal. The court did not order Brown to file a Rule 1925(b) statement and, in lieu of filing an opinion pursuant to Pa.R.A.P. 1925(a), the court relies on its opinion dated February 25, 2025. *See* Pa.R.A.P. 1925(a), (b).

On appeal, Brown presents the following question for our review:

> Did the lower court violate [Brown's] right to due process and equal protection pursuant to the Fourteenth Amendment of the [United States] Constitution and Art. 1[,] § 26 of the Pennsylvania Constitution by improperly reviewing [his] petition to enforce plea agreement/writ of *habeas corpus* under the [PCRA]?

Appellant's Brief, at 7 (unpaginated) (unnecessary capitalization omitted).

Our standard of review is well-settled. "In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the [post-conviction] court and whether the ruling is free of legal error." *Commonwealth v. Howell*, 322 A.3d 243, 245 (Pa. Super. 2024) (citations omitted).

Brown avers that the claims raised in his petition are not cognizable under the PCRA, and as such, are not subject to the statute's jurisdictional time-bar, because by "requesting to receive the benefit of his bargain and [to] be made eligible for parole[,]" he is seeking specific performance of his plea

agreement as a remedy. Appellant's Brief, at 12, 16 (unpaginated) ("Brown's sole request for relief has always been for the continued enforcement of the terms of a valid plea agreement"). Accordingly, Brown contends that the trial court erred in construing and dismissing his petition as an untimely PCRA petition. We are constrained to agree.

> A petition for collateral relief will generally be considered a PCRA petition if it raises issues cognizable under the PCRA. ***See*** 42 Pa.C.S.A. § 9542 (stating PCRA shall be sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for same purpose). The plain language of the PCRA mandates that claims which could be brought under the PCRA, must be brought under the PCRA. The timeliness of a PCRA petition is a jurisdictional requisite. A PCRA petition must be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is "final" at the conclusion of direct review or at the expiration of time for seeking review. 42 Pa.C.S.A. § 9545(b)(3). The exceptions to the PCRA time-bar allow for very limited circumstances under which the late filing of a petition will be excused; a petitioner asserting an exception must file a petition within 60 days of the date the claim could have been presented. ***See*** 42 Pa.C.S.A. § 9545(b)(1-2).

> On the other hand, a collateral petition to enforce a plea agreement is regularly treated as outside the ambit of the PCRA and under the contractual enforcement theory of specific performance. The designation of the petition does not preclude a court from deducing the proper nature of a pleading.

***Commonwealth v. Kerns***, 220 A.3d 607, 611-12 (Pa. Super. 2019) (case citations and some quotation marks omitted).

Based on the foregoing, Brown's claims are not cognizable under the PCRA. In his petition, Brown asserted that he was not challenging "the legality of his confinement [or] his conviction under any [] provisions of the PCRA." Writ of *Habeas Corpus*, 8/8/23, at ¶ 3. Brown further asserted that he "has

never been afforded an opportunity to receive the benefit of his plea bargain" because he has not been made eligible for parole in accordance with the terms of his plea agreement, and that "[t]he only available avenue to [e]nsure the specific enforcement of [his] plea agreement rests in the remedies available through state *habeas corpus*." ***Id.*** at ¶ 11. Because Brown sought enforcement of a term that was allegedly included in his plea agreement, the nature of his pleading fell "outside the ambit of the PCRA" and properly sounded in "the contractual enforcement theory of specific performance." ***Kerns***, 220 A.3d at 612 (citation omitted). Therefore, Brown's petition was not cognizable under the PCRA and subject to its timeliness provisions.

However, this determination does end our inquiry, as the court alternatively concluded that Brown was not entitled to his requested relief because he pled guilty to second-degree murder "*solely* in exchange for the remaining charges to be *nolle prossed*" and "there was no mention of parole as part of the plea agreement offer[ed] by the Commonwealth at the time of the plea." Trial Court Opinion, 2/25/25, at 5 n.9 (unpaginated) (emphasis in original; unnecessary capitalization omitted). After reviewing Brown's petition under the pertinent contract law principles, we agree.

"Although a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law standards." ***Commonwealth v. Snook***, 230 A.3d 438, 444 (Pa. Super. 2020) (citation omitted). "Contract interpretation, including in the criminal plea-bargaining

process, is a question of law. Therefore, our standard of review is *de novo*, and to the extent necessary, the scope of our review is plenary." ***Commonwealth v. Coleman***, 320 A.3d 1217, 1222 (Pa. Super. 2024) (citations and internal quotation marks omitted).

Because plea bargains are integral to our criminal justice system, "it is critical that plea agreements are enforced, to avoid any possible perversion of the [plea-bargaining] system." ***Snook***, 230 A.3d at 444 (citation omitted). Prior to entering a negotiated plea, the parties to the agreement "shall state on the record in open court, in the presence of the defendant, the terms of the agreement[.]" Pa.R.Crim.P. 590(B)(1). "[W]hen the parties enter the plea agreement and the court accepts and approves the plea, then the parties and the court must abide by the terms of the agreement." ***Snook***, 230 A.3d at 444 (citation omitted). "[D]isputes over any particular term of a plea agreement must be resolved by objective standards." ***Id.*** (citation omitted). "Whether a particular plea agreement has been breached depends on what the parties to the agreement reasonably understood to be the terms of the agreement." ***Id.*** (citation omitted).

"Specific performance is a traditional contract remedy that is available when monetary damages are inadequate" and is generally "reserved for remedying an injured party to a fully consummated agreement, such as an agreed-upon and executed plea bargain." ***Commonwealth v. Cosby***, 252 A.3d 1092, 1143 (Pa. 2021) (internal quotation marks and citations omitted).

"[A] convicted criminal is entitled to the benefit of his bargain through specific performance of the terms of the plea agreement." **Commonwealth v. Moose**, 245 A.3d 1121, 1130 (Pa. Super. 2021) (brackets and citation omitted). "A determination of exactly what promises constitute the plea bargain must be based upon the totality of the surrounding circumstances and involves a case-by-case adjudication." **Id.** (citation omitted). Where a party to a plea agreement alleges that he was denied the benefit of his bargain, "a court must determine whether an alleged term is part of the parties' plea agreement" prior to awarding specific performance of the term. **Id.** (citation omitted).

In his petition, Brown asserted that "[t]he granting of parole eligibility was a contingent term to the contract as understood and presented to [him] prior to his acceptance of the [plea agreement]." Writ of *Habeas Corpus*, 8/8/23, at ¶ 10. As such, Brown contends that to receive the benefit of his plea bargain, he must be "made eligible for parole." Appellant's Brief, at 12 (unpaginated). We disagree.

Brown's bald assertion that the possibility of parole was a specific term of his plea agreement is fatal to his contract enforcement claim. **See Estate of Caruso v. Caruso**, 322 A.3d 885, 896 (Pa. 2024) ("It is a foundational principle of our law that, in order for a court to compel specific performance of a contractual provision, the party seeking such relief must demonstrate the existence of a contract between the parties containing that provision."). The

- 7 -

certified record is devoid of any evidence to support Brown's contention that the possibility of parole was a specific term incorporated into the plea agreement. Brown did not attach to his petition for *habeas corpus* a written plea agreement. Our review of Brown's oral plea colloquy, the only evidence of the terms of his plea agreement, indicates that Brown is seeking specific performance of a term that was not included in the agreement.

Prior to Brown entering his plea, the parties clearly agreed and stated, in open court, that in exchange for Brown's guilty plea and the withdrawal of a previously filed motion to suppress evidence, the Commonwealth would *nolle pros* his remaining charges at the time of sentencing. **See** N.T. Guilty Plea and Sentence, 9/20/83, at 2. The court proceeded to conduct an oral colloquy during which Brown confirmed that he understood the terms of this agreement and that, upon entering a plea of guilty to second-degree murder, he would receive a mandatory life sentence. **See id.** at 4, 9, 18-19, 22-23. Throughout the colloquy, neither the court, defense counsel, nor the Commonwealth indicated that the possibility of parole was a term to the agreement. Notably, immediately prior to Brown entering his plea, the court engaged him in the following line of questioning:

> The Court: With the exception of the Commonwealth dropping the other charges other than murder in the second degree, have any other promises or threats been made to you?
>
> Do you understand that is the bargain that the Commonwealth and your counsel have agreed upon?

If you plead guilty to murder in the second degree, all other charges will be dropped.

Do you understand that?

[Brown]:    Yes. So that would be second degree, life?

The Court:  That would be the only sentence imposed upon you, if I accept the plea.

[Brown]:    Yes, sir.

* * *

The Court:  Now, you are also aware, I take it, because you have been told, but I want to repeat, upon the acceptance of a plea of guilty to murder in the second degree and my acceptance of it, it would be a conviction, and the court would have no discretion in sentencing you. I couldn't put you on probation or I couldn't do anything but sentence you to life in prison. I would have no choice.

Is that clear to you?

[Brown]:    Yes, sir.

The Court:  So the consequences of the conviction and the acceptance of this plea of guilty to murder in the second degree means that you would be sentenced to life in prison. The court wouldn't have any choice other than that, and you wouldn't have any choice.

Is that clear to you?

[Brown]:    Yes.

* * *

The Court:  All right, I accept the plea to murder in the second degree with the understanding that all other charges are to be *nolle prossed*.

*Id.* at 18, 22, 31 (unnecessary capitalization omitted). Following this exchange, Brown entered his plea of guilty to the charge of second-degree murder. *See id.* at 31.

To support his contention that the possibility of parole was a contingent term to his plea agreement, Brown relies upon the following exchange between the court and Brown's mother, which occurred prior to the imposition of his sentence:

> The Court:      Well, I want you to know this:
>
> A life sentence is required. I have no choice.
>
> Mrs. Brown:      I understand.
>
> The Court:      But under our system, he may apply for parole, if he has behaved himself, and the way it is operating today, as I understand it, they will entertain or receive petitions for parole in about twelve years, and if he behaves himself, shows that he can come back and take his place in society, he may be paroled.
>
> What I am trying to tell you, it is not the end of the world.
>
> * * *
>
> The Court:      Let's hope that at some future date he is paroled, but I don't want to hold out any false hope for you. It will be at least twelve to thirteen years.
>
> However, there is daylight. I want you to know that.

*Id.* at 33-34 (unnecessary capitalization omitted).

While the court's comments concerning the future possibility of parole were undisputedly mistaken,[4] Brown cannot logically claim that he reasonably understood the terms of his plea agreement to include the possibility of parole because the court made these erroneous comments after Brown had already orally entered his guilty plea on the record, *see id.* at 31, and there was no mention of such possibility prior to its entry.[5] Furthermore, the court made it clear that the possibility of parole was not a part of his plea agreement, nor was it a condition of his sentence. Lastly, the court made clear that it was an issue not to be decided by the sentencing court, but would be within the discretion of another entity, i.e., the Pennsylvania Board of Probation and Parole. Accordingly, Brown's reliance upon these comments to support his position is unavailing.

Considering the totality of the circumstances, we conclude the court properly found that the possibility of parole was not a term of Brown's plea

---

[4] *See* 18 Pa.C.S.A. § 1102(b) ("[A] person who has been convicted of murder of the second degree... shall be sentenced to a term of life imprisonment."); *Hudson v. Pennsylvania Board of Probation and Parole*, 204 A.3d 392, 399 (Pa. 2019) (The Board lacks statutory authorization "to release on parole an inmate servicing a mandatory life sentence for second-degree murder.") (citation omitted).

[5] Because "a defendant's eligibility for parole is a collateral consequence of his guilty plea[,]" a court is under no duty to "advise a pleading defendant of the release rules of the Pennsylvania Board of Probation and Parole or his chances for parole, even assuming the court could predict such an administrative procedure." *Commonwealth v. Stark*, 698 A.2d 1327, 1332 (Pa. Super. 1997) (internal quotation marks and citations omitted).

agreement. **See Moose**, 245 A.3d at 1130. Contrary to his assertions, Brown received the benefit of his plea bargain when his remaining charges were *nolle prossed*, as this was the sole term favorable to him that was included in the agreement. Brown is not entitled to specific enforcement of a non-existent plea agreement term and is due no relief. Therefore, we affirm the court's denial of relief on alternative grounds.[6]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/6/2026

---

[6] "This Court may affirm a [post-conviction] court's order on any legal basis." **Commonwealth v. Pridgen**, 305 A.3d 97, 101 (Pa. Super. 2023) (brackets and citation omitted).

- 12 -